[No. 16508-2-II.    Division Two.    August 9, 1995.]

*In the Matter of the Marriage of* DELORES A. MONAGHAN, *Appellant, and* ROBERT D. MONAGHAN, *Respondent.*

*Michael J. Turner*, for appellant.

*Patrick K. Daly* and *Daly and MacFie*, for respondent.

HOUGHTON, A.C.J. — Dolores Monaghan appeals from a denial of her motions for imposition of judgment and clarification of her 1987 decree of dissolution of marriage. We reverse and remand.

## I

### FACTS

Dolores Monaghan and Robert Monaghan were married in 1956.[1] The marriage was dissolved by decree of dissolution (Decree) on September 1, 1987.

The Decree divided the parties' community property equally, designated by two separate property schedules. The property schedule awarded to Robert, among other items not at issue:

> 12. His dental practice, subject to [an] interest in favor of the petitioner, Dolores Monaghan, in an amount computed as 50% of the gross funds received in excess of $80,000.00, from the sale of the dental practice.

Both parties were required to pay all encumbrances, liens or debts associated with the property each received and to hold the other harmless from liabilities regarding that property. Each party was further responsible for any income tax liability arising out of the sale of any divided property and debts and obligations accrued since the date of the separation.

On December 24, 1991, Robert executed a contract to sell his dental practice to Alison Polwarth, D.D.S. Dolores did not take part in the negotiations for the sale. That sale consisted of:

---

[1] The court meaning no disrespect, but for the sake of simplicity and clarity, identifies the parties using their first names. Additionally, the legal documents are inconsistent in the spelling of Dolores, sometimes spelling it "Delores." We spell her name "Dolores" as she signs all documents in that spelling.

[the] entire practice, together with all equipment, improve-
ments, apparatus, furniture and fixtures, leasehold improve-
ments, patients' files/charts, supplies, and all other items lo-
cated in Monaghan's office and which were used in the
practice (except cash and personal effects of Monaghan) . . . .

In the contract of sale, the purchase price, $160,000, was
apportioned as follows:

| | |
|---|---|
| Equipment and Leasehold Improvements | $        0 |
| Inventory and Supplies | $  20,000 |
| Covenant Not to Compete | $109,000 |
| Patient List | $  15,000 |
| Goodwill | $  16,000[2] |

The sale documents did not identify any accounts receiv-
able or other moneys owed to Robert before the closing
date, January 3, 1992. Likewise, accounts payable, obliga-
tions incurred or claims against Robert were to be his
responsibility. Pursuant to the covenant not to compete,
Robert agreed not to practice within Pierce County for
five years, subject to specific exceptions. The sale of the
practice included a 10% sales commission, payable by the
seller.[3]

Dolores and Robert dispute the value of the dental
practice and what the sale of the practice included. Do-
lores claims the practice sold for $160,000 — the contract-
stated price. Robert claims it sold for $31,000. He arrived
at this figure based upon a value of $7.50 per active patient
and inclusion of only the patient list and goodwill in the

[2]There are many inconsistencies in the assigned value for the different assets
comprising the dental practice. For example, the contract of sale values the
inventory and supplies at $20,000 and the equipment at $0, while exhibit A to
the contract, inventory appraisal, values inventory and supplies and equipment
at $30,000. These inconsistencies, however, are not determinative of this court's
decision, but are factors to be considered on remand.

[3]The commission, $14,000, represented a total sale price of $160,000 less cost
of furniture and fixtures, $20,000, for a revised total price of $140,000. Robert
moved to strike the source document for this commission figure. The admissibil-
ity of this document was not addressed at the clarification hearing.

sales price. His calculation excludes the inventory and supplies, and the covenant not to compete. Because, by Robert's calculation, the practice sold for less than his allotted $80,000, he believed he owed Dolores nothing and therefore did not share any of the proceeds with her.

On July 17, 1992, Dolores moved for imposition of judgment against Robert. In an accompanying affidavit, Dolores requested an entry of judgment against Robert for 50% of the gross funds received in excess of $80,000 from the sale of the practice. By separate motion, Dolores also requested the trial court to clarify the content of the Decree regarding the accounts receivable for Robert's dental practice. In an accompanying affidavit, Dolores sought an accounting of the amounts of the accounts receivable that Robert received from the practice.[4]

The matter was submitted to the trial court on affidavits, the contract for the sale of the practice, the decree of dissolution and the property settlement agreement. The trial court granted Robert's motion to strike portions of Dolores's accountant's affidavit to the extent it contained legal conclusions. The trial court did not rule on Robert's other motions to strike portions of Dolores's affidavits and the letter of compromise sent to her counsel.

After the trial court reviewed submitted material, it issued a document entitled "Findings of Fact and Conclusions of Law Re: Petitioner's Motion for Summary Judgment." The trial court denied both of Dolores's motions. At oral argument on this appeal, counsel for both parties conceded that the order below was improperly characterized as summary judgment. The parties agree that on appeal the court should review the record for substantial evidence.

---

[4]It is not clear what accounts receivable were requested — at the time of dissolution or at the time of sale.

## II

### ANALYSIS

■ On review, we therefore determine whether the findings are supported by substantial evidence, and in turn, whether the findings support the conclusions of law and judgment. *State v. Halstien*, 122 Wn.2d 109, 128-29, 857 P.2d 270 (1993). Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise. *Robinson v. PEMCO Ins. Co.*, 71 Wn. App. 746, 753, 862 P.2d 614 (1993).

### A

### Motion for Clarification of Decree

Dolores contends the trial court erred in denying her motion for clarification of the Decree's terms regarding Robert's dental practice.[5] She asserts that she is entitled

---

[5]The trial court entered the following findings of fact and conclusions of law:

#### FINDINGS OF FACT

1. On or about the 1st day of September, 1987, the parties' marriage was dissolved.

2. The respondent husband received his dental practice as part of the property settlement, subject to an interest in favor of the petitioner wife in an amount computed as 50% of the gross funds received in excess of $80,000.00 from the sale of the dental practice.

3. The respondent husband sold his dental practice in January, 1992 for the sum of $31,000.00

4. The accounts receivable were not sold as part of the dental practice.

5. The covenant not to compete was not sold as part of the dental practice.

. . . .

#### CONCLUSIONS OF LAW

1. The respondent's dental practice was sold for less than $80,000.00, and consequently there is no money due and owing to the petitioner.

2. The accounts receivable were not a part of the sale of the dental practice, and the covenant not to compete was not a part of the sale, and therefore there is no money due and owing to the petitioner.

3. The petitioner's motions are hereby denied.

to one-half of the gross funds in excess of $80,000. According to Dolores, she is entitled to $40,000 and requests a judgment accordingly.

■ A clarification of a dissolution decree explicitly defines the rights and obligations that were previously granted. *In re Jarvis*, 58 Wn. App. 342, 345, 792 P.2d 1259 (1990). Construction of a decree is a question of law to be determined by examining the document itself to find out its intended effect. *In re Bocanegra*, 58 Wn. App. 271, 275, 792 P.2d 1263 (1990), *review denied*, 116 Wn.2d 1008 (1991). The court uses general rules of construction applicable to statutes, contracts and other writings to ascertain the meaning of the decree. *In re Sager*, 71 Wn. App. 855, 862, 863 P.2d 106 (1993).

Dolores contends that the trial court erred in ascribing a $31,000 value to the dental practice because it did not interpret the contract of sale as a whole pursuant to *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990). Dolores asserts that when engaging in such an interpretation, the court must " 'declare the meaning of what is written, and not what was intended to be written' ." *Berg v. Hudesman*, 115 Wn.2d at 669 (quoting *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 348-49, 147 P.2d 310 (1944)). "Unilateral and subjective" beliefs about the impact should not be considered as representing the intent of the parties. *Olympia Police Guild v. City of Olympia*, 60 Wn. App. 556, 559, 805 P.2d 245 (1991). Dolores asserts that applying these stated principles to the sales contract for the dental practice compels a finding that Robert sold his practice for $160,000. She further asserts that there is substantial evidence that at the time of dissolution, the parties placed a much higher value on the sale than $31,000. Furthermore, she argues that the $31,000 figure is at odds with the decree itself in which she says the court assigned a minimum value of $80,000.

▉ The basis for the trial court's conclusion that the dental practice sold for less than $80,000 is not evident from the record. Findings of fact and conclusions of law should be sufficient to suggest the factual basis for the ultimate conclusions. *Groff v. Department of Labor & Indus.*, 65 Wn.2d 35, 40, 395 P.2d 633 (1964); *see also In re Berg*, 47 Wn. App. 754, 756, 737 P.2d 680 (1987) (A trial court is required to create an adequate record of the proceedings for appellate review); *In re LaBelle*, 107 Wn.2d 196, 219, 728 P.2d 138 (1986) (*citing Maehren v. Seattle*, 92 Wn.2d 480, 487-88, 599 P.2d 1255 (1979) (trial court must establish and set forth the existence or nonexistence of determinative factual matters), *cert. denied*, 452 U.S. 938 (1981)). Inadequate written findings may be supplemented by the trial court's oral decision or statements in the record. *LaBelle*, 107 Wn.2d at 219 (citations omitted). Supplementing the trial court record with the court's oral ruling here, however, is not helpful because the trial court did not explain how it reached its conclusion. In its oral ruling, the trial court said:

> I don't think anything other than the goodwill was contemplated here. I don't think anything as far as the fixtures, furniture, equipment is contemplated here. The covenant not to compete I don't believe is contemplated here.

▉ In valuing a closely held business or a business largely dependent upon intangible assets associated with a professional practice, the trial court " 'must set forth on the record which factors and methods were used in reaching its finding' of value." *Berg*, 47 Wn. App. at 757 (quoting *In re Hall*, 103 Wn.2d 236, 247, 692 P.2d 175 (1984)). In *Berg*, the trial court simply accepted the husband's (the managing spouse's) value of a closely held corporation in contravention to the expert's testimony. On appeal, the court found nothing in the record to rebut the expert's testimony, and thus remanded for redetermination of book value of the corporation. The circumstances in *Berg* are similar to those here. The trial court agreed with Robert's valuation of the practice without explaining how it reached its conclusion and despite Dolores providing an

accountant's affidavit as to what the "value" of a business typically includes.

From our review of the record, there was not substantial evidence to support the trial court's finding that Robert sold his dental practice for the sum of $31,000. Furthermore, not only is the record silent as to how the trial court reached its overall conclusion, but also the record is incomplete as to how the court reached its *determination* of value for goodwill.

■ Goodwill is an intangible asset of a business, representing the expectation of a continued public patronage. It cannot be disposed of apart from the business as a whole. *In re Knight*, 75 Wn. App. 721, 726, 880 P.2d 71 (1994), *review denied*, 126 Wn.2d 1011 (1995). Our Supreme Court has held that a trial court evaluating goodwill must use one or more of the accepted methods in determining value when appropriate. *Hall*, 103 Wn.2d at 243-45.[6] The *Hall* court recognized that the methods are not exclusive, but may be used in conjunction with the factors laid out *In re Fleege*, 91 Wn.2d 324, 588 P.2d 1136 (1979), "to achieve a just and fair evaluation of the existence and value of any professional's goodwill." *Hall*, 103 Wn.2d at 245. *Fleege* involved a dispute about whether a dental practice included goodwill which could be valued. The *Fleege* court set forth factors to consider in valuing goodwill such as: "the practitioner's age, health, past demonstrated earning power, professional reputation in the community as to his judgments, skill, knowledge and his comparative professional success." *Hall*, 103 Wn.2d at 242. On remand the trial court is to set forth specifically the method used in determining the value of the goodwill.

■ Dolores further contends that the covenant not to compete is interrelated to goodwill and should be included in the total value of the practice. We agree with the trial

[6]The *Hall* court recognized the following methods as acceptable for determining value of goodwill: Straight capitalization accounting method, capitalization of excess earnings, IRS variation of capitalized excess earnings method, market value approach and buy/sell agreement method. *Hall*, 103 Wn.2d at 243-45.

court that a covenant not to compete is not an asset of the dental practice. However, while a covenant not to compete is the separate property of the covenantee because it restricts the covenantee's future conduct, it is related to and interdependent to goodwill. *See Knight, Vale & Gregory v. McDaniel*, 37 Wn. App. 366, 369-70, 680 P.2d 448, *review denied*, 101 Wn.2d 1025 (1984). Moreover, because the trial court failed to make adequate findings regarding the assigned value of the various assets of the practice, we have no way of determining whether the $109,000 assigned to the noncompetition clause is fair. Dolores's accounting expert opined that for accounting purposes, the seller would amortize the $160,000 sales figure, not just the $31,000, and therefore that was the proper sale price.

Washington courts have not addressed the treatment of a covenant not to compete in a dissolution context, but other jurisdictions have. *See, e.g., Lucas v. Lucas*, 95 N.M. 283, 285, 621 P.2d 500 (1980); *Also see Carr v. Carr*, 108 Idaho 684, 701 P.2d 304 (Ct. App. 1985) (goodwill and a covenant not to compete essentially the same here, because both spouses involved in daily operations of truck stop). In these jurisdictions, the court basically assesses the fairness of the segregation and assigned value of the noncompetition clause in relation to other assets. If the apportionment is unfair because the assigned value is the majority of the business assets, then a more fair and objective apportionment is needed. *See In re Quay*, 18 Cal. App. 4th 961, 22 Cal. Rptr. 2d 537, 541-42 (1993) (preliminary determination of fairness of covenant not to compete in relation to the assigned value of the other business' assets is necessary).

In *Lucas*, the wife filed for divorce and requested the court to divide the property equitably. The community property included some stock in a funeral home — a business operated by the husband. The business was sold shortly after the divorce was final. Part of the sales agreement was a covenant not to compete between the husband and the buyer. The wife asked the court to consider the

covenant not to compete community property. The court stated:

> Upon the lawful dissolution of marriage, the right to compete becomes a personal right and, therefore, the separate property of the owner, who may then relinquish or exercise that right to his or her own benefit.

*Lucas*, 621 P.2d at 502. The court held that the valuation and segregation of the business assets were fair. The court reasoned that each shareholder could determine whether the price paid was adequate and that the evidence presented distinguished the amount paid for the sale of the stock from the amount paid for the covenant not to compete. *Lucas*, 621 P.2d at 502. Thus the covenant not to compete was the personal property of the husband. *Lucas*, 621 P.2d at 502. We find the reasoning of *Lucas* and *Quay* persuasive.

Here, we cannot determine the fairness of the assigned value of the covenant not to compete relative to the other assets. Dolores had no part in the negotiations and valuations for the sale of the dental practice, yet the trial court erroneously found that she was bound by Robert's determination, fair or not. Generally, covenants not to compete are used to protect a legitimate business interest and "should be no greater in scope than is necessary to protect the business or goodwill of the employer." *Knight, Vale & Gregory*, 37 Wn. App. at 370. On remand, the trial court is to segregate the value of the practice from the value of the covenant not to compete based upon all of the evidence rather than one party's bald assertions. The trial court is further required to evaluate the equity of the apportioned value of all assets and make adequate findings to support its conclusion.

## B
### Tenants in Common: Accounts Receivable

Dolores contends that if the accounts receivable were not included in the sale of the dental practice, then they are undistributed property. Dolores's accountant testified

by affidavit that accounts receivable usually are included for business valuation purposes. The sales documents excluded the accounts receivable.

■ Community property not disposed of by decree is held by the parties as tenants in common. *In re de Carteret*, 26 Wn. App. 907, 908, 615 P.2d 513 (1980). The adjudication of rights in property not disposed of in a dissolution decree requires an independent action for partition. *Devine v. Devine*, 42 Wn. App. 740, 743, 711 P.2d 1034 (1985). The court in the partition action is to determine the value of the accounts receivable at the time of dissolution. Where property is held as tenants in common, our Supreme Court has held that the parties intended them to share the property equally, unless the court is shown otherwise. *Cummings v. Anderson*, 94 Wn.2d 135, 141, 614 P.2d 1283 (1980). Accounts receivable at the time of sale may have been earned subsequent to the dissolution and would be Robert's separate property. On remand, the trial court is to determine what accounts receivable are undistributed community property.

## C

### Motion To Strike

Robert moved to strike portions of James Hughes's affidavit to the extent he offered a legal opinion and portions of Dolores's and Hughes's affidavits that reference offers of compromise.[7] The trial court partially granted Robert's motion to strike, but did not address the admissibility of the motion to strike portions of Dolores's affidavit and the entire letter of compromise. Generally, after a trial court has made a tentative ruling on a matter or has refused to rule entirely, the party requesting the ruling is obligated to raise the motion again to ensure that there is an adequate record on appeal. *State v. Noltie*, 116 Wn.2d 831, 844, 809 P.2d 190 (1991). Here, however the trial court

---

[7]Attached to Hughes's affidavit is a letter of compromise between the parties' counsel.

found that the practice sold for less than $80,000, which ended further analysis. On remand the trial court will have to rule on the admissibility of this evidence. We note, however, that the documents may indeed include offers of compromise which can be excluded upon proper motion pursuant to ER 408.

Additionally, on appeal, Dolores contends that the trial court improperly considered portions of Robert's affidavit that discussed how she and Robert reached their property agreement. Dolores did not properly preserve this objection for appeal and thus it will not be considered. *See Parkin v. Colocousis*, 53 Wn. App. 649, 652, 769 P.2d 326 (1989) (failing to make appropriate objection to affidavit at the trial court generally waives the issue on appeal).

## D

### Attorney Fees

Dolores requests attorney fees. She believes that she is entitled to them because of Robert's opposition to her motion, maintaining it was frivolous. However, Robert's opposition to Dolores's contentions is not so devoid of merit as to justify the imposition of attorney fees. There being no other basis for the award of fees, we decline to award attorney fees.

MORGAN and BRIDGEWATER, JJ., concur.