FILED
COURT OF APPEALS
DIVISION II

2013 FEB 26 AM 10: 21

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Estate of:<br><br>BRYAN W. JOHNSON, | No. 42402-9-II<br><br>UNPUBLISHED OPINION |

VAN DEREN, J. — Douglas Johnson appeals the trial court's dismissal of his petition to invalidate his brother's will. The trial court concluded that Bryan's[1] will, which left his entire estate to his sister, Christine Spirz, was not the product of undue influence. Douglas argues that the trial court erred when it (1) admitted Christine's testimony about conversations and transactions she had with Bryan, contrary to RCW 5.60.030 (the Dead Man's Statute) and (2) concluded that Douglas failed to raise the presumption of undue influence. We hold: (1) Douglas failed to preserve his objections to Christine's testimony; and (2) the trial court did not err when it concluded that Douglas failed to raise a presumption of undue influence because the trial court's supported and uncontested findings show that Christine did not participate in procuring the will, the distribution of Bryan's entire estate to Christine was not unnatural, and Bryan was of sound mind when he executed the will. Therefore, we affirm the trial court's dismissal.

---

[1] Because this case involves multiple family members who share the same last name, we refer to the parties by their first names for clarity. We intend no disrespect.

## FACTS[2]

Bryan and Christine had a close relationship. In 2002, Christine had moved from San Diego to live with Bryan in Sequim for seven months while they constructed homes on neighboring properties. They each titled their property in joint tenancy with right of survivorship to the other, and also held a bank account as joint tenants.

In January 2006, Bryan was hospitalized in Seattle after he suffered a heart attack. His condition required an angioplasty, and x-rays revealed that he also had lung cancer. Bryan was unmarried and had no children; Christine traveled from Sequim to stay with him in the hospital, as did Bryan's brother, Ivan Johnson, who traveled from Australia. Mark Johnson, Christine's son and Bryan's nephew, also stayed at the hospital for Bryan's surgery. Bryan's two other siblings, Douglas, who lives in New Mexico; and Shirley Tehan, who lives in San Diego; did not join their siblings or Bryan at the hospital. Before Bryan's surgery, either Bryan or Ivan prepared a handwritten will that left Bryan's estate in equal shares to his four siblings and named Christine as his personal representative.[3] Two people witnessed Bryan signing the hospital will. After Bryan's surgery, Ivan mistakenly took the "hospital will" with him back to Australia and, because he believed that will was not effective following Bryan's discharge from the hospital, he destroyed it.

---

[2] Because Douglas has not properly assigned error to any of the trial court's findings of fact, the facts are taken largely from the trial court's findings of fact and are supplemented by the record on appeal. Unchallenged findings of fact are verities on appeal. *In re Estate of Lint*, 135 Wn.2d 518, 533, 957 P.2d 755 (1998).

[3] Although the bulk of the estate was to be divided equally, Bryan made two specific bequests: he devised a vehicle to Christine and he devised a cardboard cutout poster of John Wayne to his nephew Mark.

2

On January 21, Bryan returned to his home in Sequim. Christine lived next door, and she provided care after he returned from the hospital and when his condition deteriorated following his January hospitalization. Christine also took him to doctor's appointments, but when Bryan's needs increased, Mark moved in to care for him full time.[4] In addition to Christine's and Mark's assistance, hospice workers periodically visited Bryan's home to provide additional care.

On March 16, Bryan told Christine that he had written a will and then asked her to drive him to Olympic Peninsula Title Company to have his signature witnessed.[5] Christine drove him to the title company, where two people witnessed Bryan's signature on the will. Bryan also

---

[4] The date Mark moved in with Bryan was disputed. Christine testified that, according to her calendar, Mark moved in on March 21 or 22. Mark testified that he moved in with Bryan "[a]s soon as" Bryan returned from the hospital on January 21. Report of Proceedings (RP) (Feb. 28, 2011) at 97. But Mark later recalled that he was still living in his own apartment at that time and he eventually concluded that he moved in with Bryan "a few days after" Ivan returned to Australia, although that date is not apparent from the record. RP (Feb. 28, 2011) at 24. The trial court's findings state that Mark testified that he began living with Bryan on February 26. And Jayne Johnson, Mark's former wife, testified that Mark moved in with Bryan on February 24.

[5] The circumstances surrounding the drafting of this will were disputed at trial. Mark testified via deposition that he was at Bryan's home on March 16 and that Christine was alone with Bryan for several hours that morning preparing the contested will. But the trial court found that Mark's testimony was not credible. Mark testified that he loaded Bryan's wheelchair into Christine's car the morning the contested will was prepared, but testimony at trial established that Bryan did not have a wheelchair at that time and that Bryan and Christine traveled in Bryan's truck that morning, not Christine's car. Mark also testified that he spent time at Bryan's house on March 16 moving soil that had been delivered from Anjo's Soils but the evidence at trial reflected that the soil was not delivered until April 7, 2006. Finally, Mark testified that he was at Bryan's house full time from February 26 until Bryan's death. But Christine's calendar reflected that this was not the case. And a hospice employee testified that she did not meet Mark until after several visits to Bryan's home and that she would have been conscious of who was in the home with Bryan. Another hospice employee's notes from March 22, 2006, stated, "'[S]ister is planning to move in when needed,'" which the trial court concluded "indicates no one else was living with Bryan and that Mark's deposition testimony that he was living there was false." Clerk's Papers at 127 (quoting RP (Feb. 28, 2011) at 19). Thus, the trial court found that Mark was not at the house when Bryan drafted his will on March 16 and further found that Christine did not actively participate in preparing Bryan's will.

No. 42402-9-II

transferred the title of his home to Christine by a quit claim deed. Multiple witnesses testified that Bryan was alert when he signed the will and that he did not appear mentally impaired in any way.

After Bryan's death on April 14, 2006, the March 16 will was admitted to probate and Christine was appointed personal representative. She received Bryan's entire estate under the will.[6]

Douglas contested the will, alleging that (1) Bryan was not competent when he signed it, (2) Christine assisted Bryan in preparing the will, and (3) Christine exerted undue influence over Bryan.[7] Before trial, Douglas filed a motion to exclude Christine's testimony regarding any conversations or transactions with Bryan relating to either will (the "hospital will" and the March 16 will) based on the Dead Man's Statute, RCW 5.60.030. The trial court denied the motion to exclude all of the testimony, reserving its ruling until it could determine during trial whether Douglas waived any objections and whether Christine was competent to testify regarding particular matters. At trial, Douglas made only one objection based on the Dead Man's Statute.

The trial court concluded that Bryan had testamentary capacity when he signed the March 16 will. It also concluded that Christine had not exerted undue influence persuading Bryan to draft or execute the March 16 will because, "[a]lthough Chris[tine] occupied a relationship of

---

[6] Although the trial court's findings provide that Christine received the entire estate, Bryan attached a page to his will entitled, "My Wishes," that was also signed by two witnesses. Ex. 26, at 4. In that document, Bryan directed that each of his siblings receive $5,000 and that three other individuals were to each receive $3,000. He also left $25,000 to Mark to be distributed in payments of $500 a month.

[7] When Ivan was asked why he did not join the will contest, he testified in his deposition, "I didn't care. I didn't need it. If there was any monetary gain or anything I didn't need it." RP (Feb. 28, 2011) at 80 (internal quotation marks omitted). Shirley loaned Douglas $1,800 to initiate the contest, but she also did not join the will contest against Christine.

4

trust and confidence with Bryan that was not shared with the other siblings, she did not act as an 'advisor' to Bryan, did not receive an unnatural portion of Bryan's estate, and did not participate in the preparation or procurement of the [w]ill." Clerk's Papers (CP) at 129. Thus, the trial court upheld the March 16 will, denied Douglas's claims, and dismissed his suit.

Douglas appeals.

## ANALYSIS

Douglas argues that the trial court improperly admitted statements Christine made regarding conversations and transactions with Bryan, contrary to RCW 5.60.030. He also argues that he adequately raised the presumption of undue influence by Christine and that Christine failed to rebut that presumption. We disagree.

I.     STANDARDS OF REVIEW

We review a trial court's factual findings to determine whether substantial evidence supports them. *City of Tacoma v. State*, 117 Wn.2d 348, 361, 816 P.2d 7 (1991). Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the finding. *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 712, 732 P.2d 974 (1987). "[W]here there is conflicting evidence, the court needs only to determine whether the evidence viewed most favorable to respondent supports the challenged finding." *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998). "If the standard is satisfied, we will not substitute our judgment for that of the trial court." *In re Estate of Bussler*, 160 Wn. App. 449, 460, 247 P.3d 821 (2011).

Unchallenged findings of fact are verities on appeal. *Lint*, 135 Wn.2d at 533. And "we do not weigh evidence or render judgments regarding witness credibility; that is the exclusive province of the trier of fact." *Ives v. Ramsden*, 142 Wn. App. 369, 382, 174 P.3d 1231 (2008).

No. 42402-9-II

We review conclusions of law de novo. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

We review a trial court's evidentiary rulings for abuse of discretion. *State v. Lormor*, 172 Wn.2d 85, 94, 257 P.3d 624 (2011). Thus, we reverse only if the trial court's exercise of discretion is manifestly unreasonable or based on untenable grounds or reasons. *Lormor*, 172 Wn.2d at 94. It is the party challenging the admission of evidence who must make timely and specific objections to its admission. ER 103; *State v. Avendano-Lopez*, 79 Wn. App. 706, 710, 904 P.2d 324 (1995). "Generally, after a trial court has made a tentative ruling on a matter or has refused to rule entirely, the party requesting the ruling is obligated to raise the motion again to ensure that there is an adequate record on appeal." *In re Marriage of Monaghan*, 78 Wn. App. 918, 929, 899 P.2d 841 (1995) (citing *State v. Noltie*, 116 Wn.2d 831, 844, 809 P.2d 190 (1991)).

II.   MOTION IN LIMINE—DEAD MAN'S STATUTE, RCW 5.60.030

Douglas argues that the trial court should not have admitted portions of Christine's testimony because that testimony was barred by RCW 5.60.030. He appears to assign error[8] to the trial court's reserved ruling on his motion in limine about whether Christine's testimony regarding particular transactions and conversations with Bryan was admissible.

RCW 5.60.030 provides:

[I]n an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any

---

[8] Douglas argues that we should review the applicability of RCW 5.60.030 de novo, but fails to support this contention with relevant citation to authority; thus, we decline to address it further. RAP 10.3(a)(6). Because it appears that Douglas assigns error to the trial court's ruling on his motion to exclude Christine's testimony, an evidentiary ruling, we review for abuse of discretion. *Lormor*, 172 Wn.2d at 94.

6

transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased . . . person.

"The purpose of the statute is to 'prevent interested parties from giving self-serving testimony about conversations or transactions with the decedent.'" *Erickson v. Robert F. Kerr, M.D., P.S.,* 125 Wn.2d 183, 187, 883 P.2d 313 (1994) (quoting *Wildman v. Taylor,* 46 Wn. App. 546, 549, 731 P.2d 541 (1987)). The statute's protections may be waived if the party seeking to exclude the testimony introduces evidence regarding transactions with the decedent. *Erickson,* 125 Wn.2d at 187-88.

Here, before trial, Douglas moved to exclude all of Christine's testimony relating to conversations or transactions with Bryan regarding either the "hospital will" or the March 16 will. The trial court denied that motion and, instead, reserved ruling on whether particular testimony would be excluded because the trial court had concerns about Christine's competency to testify about the events that took place in Bryan's home on March 16 when the contested will was drafted. Thus, it ruled, "There may be some issue there with regard to whether that's a transaction that involves [Christine] that she can testify about so I think when we get there you just make your arguments at that time." Report of Proceedings (RP) (Feb. 28, 2011) at 15.

The trial court also reserved ruling because it anticipated the issue of waiver arising at trial if Douglas were to introduce evidence about Bryan's transactions with Christine. The trial court ruled:

> It's hard for me to make [sic] a motion in limine without the context and I think the other issue is waiver, one of waiver.
> If [Douglas] is going to present testimony with regard to the deeds or he's going to present testimony with regard to the will and those types of things he may in fact be waiving any objections he may have to the Dead Man's [Statute].
> So you may want to look at the waiver issue because that's a big issue in regards to these as well.

> So I think what we'll do is just, I mean I'm not going to grant the motion in limine at this point, we'll just see how the testimony comes in and at what point and I'll just try to make rulings and make [sic] objections at that time, okay?

RP (Feb. 28, 2011) at 15.

Relying on the last line of the trial court's ruling, Douglas now argues, "According to the [r]ecord the Judge undertook to make both objections and rulings himself, later. Thereafter and throughout [Christine's] testimony, the Judge made no objections or rulings regarding the Deadman [sic] Statute disqualification." Br. of Appellant at 12. Douglas asserts that the trial court abused its discretion because it failed to object to Christine's testimony and then rule on its own objections, thus allowing admission of Christine's testimony, contrary to RCW 5.60.030.

By focusing on only the last part of the last sentence, Douglas misreads the trial court's ruling. The entirety of the trial court's ruling on Douglas's motion clearly shows that the trial court reserved ruling on the admissibility of Christine's testimony and invited Douglas to object later, when Christine sought to introduce the testimony. In doing so, the trial court reasoned that there were factual issues regarding Christine's competency and potential issues of waiver by Douglas that had not been developed before trial. The trial court's decision to defer ruling on the admission of evidence during the trial was not manifestly unreasonable or based on untenable grounds or reasons. *Lormor*, 172 Wn.2d at 94.

Moreover, during trial, Douglas failed to object to any of the testimony he now asserts was improperly admitted. He asks us to hold that the trial court abused its discretion based on his incorrect assertion that the trial court should have made his objections for him. But the record indicates that Douglas did not, in fact, act under his mistaken assumption during trial because he did object to Christine's testimony based on the Dead Man's Statute on one occasion.

We hold that the trial court did not abuse its discretion when it made this evidentiary ruling and Douglas has failed to preserve his objections to Christine's testimony.

III.  INADEQUACY OF THE BRIEF CHALLENGING THE TRIAL COURT'S ORDER

Douglas next argues that the trial court erred when it concluded that he failed to raise a presumption of undue influence by Christine. To support this claim, Douglas first states the issues on appeal in terms of the trial court's decisions about the weight of the evidence and the credibility of witnesses at trial. In an argument spanning 14 pages—without a single citation to legal authority—Douglas enumerates 28 excerpts from Mark's testimony and another 13 excerpts from Jayne's testimony, arguing that the trial court should have found that Mark's testimony was credible and should have given greater weight to Jayne's testimony. Douglas, in essence, asks us to retry the case by attributing weight to testimony he feels was most important and by determining the witnesses' credibility. But we do not review the trial court's weight and credibility determinations, thus, Douglas's argument fails.[9] *Ives*, 142 Wn. App. at 382.

---

[9] Nevertheless, Douglas's arguments that have at least some basis in law are set forth below.

First, Douglas argues that the trial court improperly "exclude[d]" Jayne's testimony. Br. of Appellant at 10. He relies on the following rule: "Where the trial court prejudges the credibility of witnesses, rejects that credibility as insufficient to sustain the plaintiff's burden, and excludes the witnesses' testimony, the court's findings are not entitled to the protection of the 'clearly erroneous' standard.'" Br. of Appellant at 10-11 (internal quotation marks omitted) (quoting 5 AM. JUR. 2D APPELLATE REVIEW § 642, at 393 (2007)). But this rule applies when the trial court prevents the proponent of the evidence from presenting it altogether, not in cases where the trial court has heard the evidence and has merely failed to give it the weight Douglas believes it was due. The latter determination is one that the trial court is fully authorized to make and that we will not review. *Ives*, 142 Wn. App. at 382.

Second, Douglas similarly argues that by failing to do more than mention the fact that Jayne testified at trial in its findings and conclusions, the trial judge "arbitrarily ignore[d] positive, credible, admissible, compelling, and uncontradicted evidence" and that "this alone is sufficient ground for reversal." Reply Br. of Appellant at 13, Br. of Appellant at 26 (underline omitted). Douglas relies on additional articles and various out-of-state cases to support his correct contention that if "the [trial] court rejects uncontroverted credible evidence, or capriciously disbelieves uncontradicted evidence, then the finding is not binding upon the

Douglas also fails to assign error to any of the trial court's findings of fact or conclusions of law by number or with specificity sufficient to direct us to the challenged findings or

appellate court." *Smith v. Pac. Pools, Inc.*, 12 Wn. App. 578, 582, 530 P.2d 658 (1975). Here, Jayne supported Mark's claims that he was living with Bryan on March 16 when the will was signed and that the will was contrary to Bryan's wishes. But the trial court recognized, and we agree, that her testimony did not provide the court with further evidence about whether Christine procured the will because Jayne had no firsthand knowledge of what happened on March 16. And the trial court had reasons to question Jayne's credibility. Jayne testified that she "came up with" the idea to challenge the will because Christine was "being so rude, mean, [and] cruel" when she prohibited Jayne and Mark from moving into Bryan's home the day after he died. RP (Mar. 2, 2011) at 38. Accordingly, we hold that the trial court did not exclude Jayne's testimony or arbitrarily give it less weight and, thus, Douglas' contention fails.

Finally, Douglas contends that we should review and weigh Mark's testimony de novo because he testified by deposition. In support of this contention, Douglas cites the following passage from *In re Estate of Riley*, 78 Wn.2d 623, 654, 479 P.2d 1 (1970):

> [W]here deposition testimony is before an appellate court and the witness did not testify orally at the trial court, the latter's findings with respect to such testimony may be disregarded. . . . In such a situation the appellate court will determine from the deposition what findings should have been made.

This exception applies when "[a]n appellate court stands in the same position as the trial court where the record consists *only* of affidavits, memoranda, and other documentary evidence." *Koenig v. Thurston County*, 175 Wn.2d 837, 842, 287 P.3d 523 (2012). Here, we are asked to weigh the credibility of a witness who testified by deposition against a witness who testified live; we are not in the same position as the trial court. And this exception does not interfere with the longstanding rule that "we do not weigh evidence or render judgments regarding witness credibility; that is the exclusive province of the trier of fact." *Ives*, 142 Wn. App. at 382.

Even if we were to independently evaluate Mark's credibility, we would hold that the trial court did not abuse its discretion or commit error in finding that Mark's testimony was not credible. As discussed above, the trial court found multiple discrepancies in Mark's construction of the events that took place at Bryan's home on March 16, 2006, and we agree that the flaws alone are sufficient to conclude that his testimony was not credible. Moreover, in addition to the reasons the trial court cited, Mark himself testified multiple times that he has trouble remembering dates and times and that he has lied on multiple occasions in the past. Ivan also testified in his deposition that Mark was "[s]crewing around with Bryan's will" and that Mark was a "liar." RP (Feb. 28, 2011) at 87, 89 (internal quotation marks omitted). And both Douglas and Mark testified that Douglas promised Mark that if the will contest was successful, Douglas would pay Mark the $25,000 that he had been designated to receive in the "My Wishes" document in a lump sum as opposed to the $500 increments Bryan provided.

conclusions.[10] And Douglas does not adequately support the section of his appellate brief devoted to the facts with citations to the record, contrary to RAP 10.3(a)(5). His brief contains a chronology of undue influence cases interspersed with conclusory arguments or statements that are not helpful to our understanding of the cited authority or the record.[11]

It is not the function of this court "to comb the record with a view toward constructing arguments for counsel as to what findings are to be assailed and why the evidence does not support these findings." *Lint*, 135 Wn.2d at 532. Moreover, we "will not review issues for which inadequate argument has been briefed or only passing treatment has been made." *State v. Thomas*, 150 Wn.2d 821, 868–69, 83 P.3d 970, *abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). And generally, without argument and citation to authority, we will not review an assignment of error. RAP 10.3(a)(6). Accordingly, we hold that Douglas has failed to adequately challenge the trial court's conclusions of law and its findings of fact, the latter of which are verities on appeal. *Lint*, 135 Wn.2d at 533.

---

[10] In fact, the only reference Douglas makes to the trial court's conclusions is to the trial court's memorandum opinion.

> An oral opinion or memorandum decision may be used to interpret a finding if no statement is made on the subject or the findings are ambiguous or vague; however, statements made in an oral decision have no binding effect unless they are expressly incorporated within the formal findings of fact, conclusions of law and judgment.

*In re Marriage of McKinney*, 14 Wn. App. 921, 923-24, 546 P.2d 456 (1976).

[11] We note that the respondent's brief attempted to clarify the issues before us by providing ample citations to the record and by explaining Douglas's position and the relevant underlying law. While helpful, such assistance is no substitute for an adequate brief by Douglas.

IV.     FAILURE TO PROVE PRESUMPTION OF UNDUE INFLUENCE

Douglas's failure to properly challenge the trial court's conclusions notwithstanding, our independent review of the record shows that at trial Douglas failed to present sufficient evidence raising the presumption of undue influence. And even assuming he raised the presumption, our review of Christine's rebuttal evidence shows that Douglas failed to prove by clear, cogent, and convincing evidence that Bryan's will was the product of undue influence.

"A will of a person who otherwise possesses testamentary capacity may be set aside upon a showing that a beneficiary exercised undue influence over the testator." *Lint*, 135 Wn.2d at 535. The party contesting the will bears the burden of proving by clear, cogent, and convincing evidence that the will was the product of undue influence. *Bussler*, 160 Wn. App. at 465.

"The clear, cogent, and convincing burden of proof contains two components:  the burden of production and the burden of persuasion." *Bussler*, 160 Wn. App. at 465. The burden of production requires that the contestant present "substantial evidence" of undue influence, which is "evidence sufficient to merit submitting the question to the trier of fact." *Bussler*, 160 Wn. App. at 465-66. "The burden of persuasion is met if the trier of fact is convinced that the fact in issue is 'highly probable.'" *Bussler*, 160 Wn. App. at 466 (internal quotation marks omitted) (quoting *Endicott v. Saul*, 142 Wn. App. 899, 909-10, 176 P.3d 560 (2008)). As in all cases, we review the trial court's findings of fact for substantial evidence and we do not review the trial court's weight and credibility determinations.[12] *City of Tacoma*, 117 Wn.2d at 361; *Bussler*, 160 Wn. App. at 466.

---

[12] Douglas argues that because undue influence is a mixed question of law and fact, we review the trial court's findings of fact de novo. Division Three of this court has recently characterized the issue of undue influence as a mixed question of law and fact. *In re Trust & Estate of Melter*, 167 Wn. App. 285, 300, 273 P.3d 991 (2012). But such a characterization tends to obscure our

"A will is the product of undue influence when a party interferes with the testator's free will, preventing the testator from exercising his own judgment and choice." *Bussler*, 160 Wn. App. at 466. The presence of a combination of certain circumstances may raise a suspicion, "varying in its strength," that the will was the product of undue influence. *Dean v. Jordan*, 194 Wash. 661, 671-72, 79 P.2d 331 (1938). The most important of those circumstances include: "'(1) that the beneficiary occupied a fiduciary or confidential relation to the testator; (2) that the beneficiary actively participated in the preparation or procurement of the will; and (3) that the beneficiary received an unusually or unnaturally large part of the estate.'" *Lint*, 135 Wn.2d at 535-36 (quoting *Dean*, 194 Wash. at 672). Other considerations include "'the age or condition of health and mental vigor of the testator, the nature or degree of relationship between the testator and the beneficiary, the opportunity for exerting an undue influence, and the naturalness or unnaturalness of the will.'" *Lint*, 135 Wn.2d at 536 (quoting *Dean*, 194 Wash. at 672).

These circumstances do not "automatically invalidate a will; rather, they 'appeal to the vigilance of the court and cause it to proceed with caution and carefully to scrutinize the evidence offered to establish the will.'" *Bussler*, 160 Wn. App. at 466 (quoting *Dean*, 194 Wash. at 672). Thus, the presence of these circumstances may raise a question of undue influence requiring the proponent "to come forward with evidence sufficient at least to balance the scales and restore the equilibrium of evidence touching the validity of the will." *Dean*, 194 Wash. at 672. In the absence of rebuttal evidence, the existence of these circumstances may be sufficient to invalidate the will. *Lint*, 135 Wn.2d at 536. But the circumstances do not "'relieve the

---

general principles of appellate review. Regardless of whether an issue is characterized as a "mixed question," we review the trial court's factual findings for substantial evidence and the application of those facts to the law de novo. *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 687, 167 P.3d 1112 (2007).

contestants from the duty of establishing their contention by clear, cogent, and convincing evidence.'" *Lint*, 135 Wn.2d at 536 (quoting *In re Estate of Smith*, 68 Wn.2d 145, 154, 411 P.2d 879, 415 P.2d 124 (1966)).

To rise to the level of undue influence, interference with the testator's free will must be "'tantamount to force or fear which destroys the testator's free agency and constrains him to do what is against his will.'" *Lint*, 135 Wn.2d at 535 (quoting *In re Estate of Bottger*, 14 Wn.2d 676, 700, 129 P.2d 518 (1942)). "Actions such as 'giving advice, arguments, persuasions, solicitations, suggestions or entreaties' generally do not amount to undue influence unless such actions are so importunate, persistent, or coercive that they effectively subdue and subordinate the will of the testator and take away his or her freedom of action." *In re Trust & Estate of Melter*, 167 Wn. App. 285, 307, 273 P.3d 991 (2012) (quoting *In re Estate of Marks*, 91 Wn. App. 325, 333, 957 P.2d 235 (1998)).

The trial court concluded that Bryan and Christine had a relationship of trust and confidence. Douglas argues that this conclusion alone raises the presumption of undue influence and shifts the burden to Christine to produce rebuttal evidence. But Douglas failed to establish any of the other *Dean* factors.

To support his contention that showing that Bryan and Christine had a relationship of trust and confidence is sufficient to meet his burden, Douglas relies on cases involving undue influence in the context of inter vivos gifts. But "[u]nlike in the gift context, the existence of these cautionary circumstances does not shift the ultimate burden of proof." *Melter*, 167 Wn. App. at 299. First, the record supports the trial court's conclusion that Christine "did not participate in the preparation or procurement of the [w]ill." CP at 129. The trial court's uncontested findings provide, "On the morning of March 16, 2006, Bryan told Chris[tine] that he

14

had written a [w]ill and that he wanted her to take him to Olympic Peninsula Title Company to have it witnessed before they went to a previously scheduled doctor's appointment for Bryan." CP at 125. The uncontested findings also provided that "Chris[tine] remained in the background during the signing." CP at 126.

Second, the record supports the trial court's conclusion that Christine "did not receive an unnatural portion of Bryan's estate." CP at 129. "'A will is unnatural when it is contrary to what the testator, from his known views, feelings, and intentions would have been expected to make.'" *In re Estate of Riley*, 78 Wn.2d 623, 648, 479 P.2d 1 (1970) (quoting *In re Estate of Miller*, 10 Wn.2d 258, 267, 116 P.2d 526 (1941)). "A disparately large gift to one beneficiary does not necessarily denote undue influence if there is a natural explanation for it." *In re Estate of Knowles*, 135 Wn. App. 351, 359, 143 P.3d 864 (2006). And cases where courts have found an unnatural disposition of property "have generally involved the exclusion of one near and dear to the testator and the majority of the estate going 'to one with whom the testator had no close ties.'" *Knowles*, 135 Wn. App. at 360 (quoting *Estate of Smith*, 68 Wn.2d at 154).

Douglas argues that the short time period between Bryan's execution of the hospital will, in which he provided for his other siblings, and the challenged March 16 will indicates Bryan's "'unnatural[ ]'" disposition of his property. Br. of Appellant at 32. To support this argument, he relies on this court's decision in *In re Estate of Burkland*, 8 Wn. App. 153, 161, 504 P.2d 1143 (1972), in which we held that a will that left the decedent's entire estate to a woman unrelated to him was the product of undue influence. We held that the disposition of the decedent's estate was unnatural and noted that the decedent had executed a "natural" will leaving his estate to his surviving siblings only ten months before the execution of the contested will. *Burkland*, 8 Wn. App. at 160. But unlike in the present case, in *Burkland* we noted that the decedent began

spending time with the woman beneficiary only shortly before his death and that the beneficiary's presence in his life resulted in a "marked change" in his relationship with his friends and family. 8 Wn. App. at 156.

Here, the trial court's uncontested findings reveal that Bryan and Christine had a close and trusted relationship that existed for years before the contested will was executed. In 2002, Bryan and Christine moved to Sequim and lived together while their homes were being built and thereafter they lived within a few hundred feet of each other. Their other siblings lived in California, New Mexico, and Australia, and there is no evidence indicating that they had a similarly close relationship with Bryan. Bryan and Christine also had named each other as joint tenants with right of survivorship in their individual homes as well as on a bank account. Thus, this is not a case involving "the exclusion of one near and dear to the testator and the majority of the estate going 'to one with whom the testator had no close ties.'" *Knowles*, 135 Wn. Ap. at 360 (quoting *Estate of Smith*, 68 Wn.2d at 154).

Moreover, sufficient evidence supports the trial court's finding that the hospital will was a "hasty, hospital bed decision and does not reflect the 'natural' result of [Bryan's] affection and does not reflect his love and esteem for Chris[tine]." CP at 124-25. Unlike in *Burkland*, the "hospital will" did not reflect Bryan's longstanding demonstrated intent that Christine take a significant share of his estate, including his real estate. Accordingly, we hold that sufficient evidence supports the trial court's conclusion that Bryan's will did not result in an unnatural disposition of his property.

Third, Christine's rebuttal evidence supports the trial court's unchallenged conclusion that "Bryan's mental vigor on March 16, 2006 was relatively unimpaired." CP at 126. "In cases where suspicion of undue influence existed but the contestant failed to carry the burden of proof,

16

the Supreme Court has often noted the testator's strength of mind. In contrast, courts have voided wills for undue influence where the testators demonstrated 'little or no mental capacity.'" *Knowles*, 135 Wn. App. at 358 (internal citations omitted) (quoting *Estate of Smith*, 68 Wn.2d at 154).

Here, Dawn Fleming, one of the witnesses to the contested will, stated in a declaration admitted at trial, "I am very confident he was not intoxicated or mentally impaired when he was in my office and signed his [w]ill," and "[h]e was clearly sick, but he was able to communicate clearly with me." Ex. 26, at 2. And an Olympic Peninsula Title employee testified, "He appeared to know what he was asking for" and "he knew exactly what he was requesting us to do." RP (Mar. 1, 2011) at 104-05. The doctor that Bryan visited on March 16 stated that Bryan "was alert and fully able to discuss his condition and respond to all of my questions." Ex. 30, at 1. Finally, the notes taken by Bryan's hospice care worker provided that for days after hospice care began on March 21, 2006, Bryan was "[o]riented" as to time, place, and person. Ex. 27, at 2.

Finally, Douglas argues that by telling Douglas and Ivan not to visit Bryan during his illness, Christine had "exclusive access and a perfect opportunity to manipulate Bryan and his assets to her advantage." Br. of Appellant at 37. The trial court made no finding on the matter, and "'[i]n the absence of a finding on a factual issue we must indulge the presumption that the party with the burden of proof failed to sustain their burden on this issue.'" *Bussler*, 160 Wn. App. at 465 (internal quotation marks omitted) (quoting *In re Welfare of A.B.*, 168 Wn.2d 908, 927 n.42, 232 P.3d 1104 (2010)). But even assuming Douglas proved that Christine had the opportunity to exert undue influence, "opportunity alone . . . is not [a] sufficient basis for

drawing the inference that undue influence was exerted." *In re Estate of Jolly*, 197 Wash. 349, 351, 85 P.2d 267 (1938).

In sum, the trial court's supported and uncontested findings show that, although Bryan and Christine may have had a confidential relationship, Christine did not participate in the preparation or procurement of the contested will, the bequest of Bryan's entire estate to Christine was not an unnatural disposition of his property, and Bryan was of sound mind when he executed the contested will on March 16. Accordingly, we hold that the trial court did not err when it concluded that Douglas failed to raise the presumption of undue influence and denied his challenge to Bryan's will.

And regardless of whether the presumption was raised, Christine presented sufficient rebuttal evidence to "balance the scales and restore the equilibrium of evidence touching the validity of the will."[13] *Dean*, 194 Wash. at 672. This was not a case where the trial court dismissed a contestant's petition for failure to establish a prima facie case. Rather, the trial court heard extensive rebuttal testimony from six witnesses and relied on that evidence in arriving at its findings and conclusions. And contrary to Douglas's contention, the evidence was properly admitted because he failed to object to it at trial. Douglas's only evidence that the will was the product of undue influence was Mark's and Jayne's testimony, both of which the trial court either found to be not credible or to which the trial court did not assign great weight, determinations that we do not review. *Ives*, 142 Wn. App. at 382.

---

[13] Douglas argues that the required level of rebuttal evidence is clear, cogent, and convincing. But our Supreme Court has implicitly rejected Douglas's contention. *See Bottger*, 14 Wn.2d at 703-04 (evidence required to rebut undue influence presumption in estate context is a burden less than preponderance).

No. 42402-9-II

We hold that the trial court properly concluded that "Douglas did not establish his contention of undue influence by clear, cogent, and convincing evidence" and, thus, we affirm the trial court's denial and dismissal of Douglas's petition to invalidate Bryan's will. CP at 130.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Van Deren, J.
VAN DEREN, J.

We concur:

Quinn-Brintnall, J.
QUINN-BRINTNALL, J.

Worswick, C.J.
WORSWICK, C.J.

19