**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Marriage of<br><br>KARILIN McFARLAND,<br><br>        Appellant,<br><br>  and<br><br>JERROL ERNEST McFARLAND,<br><br>        Respondent. | No. 59407-2-II<br><br>DIVISION TWO<br><br>UNPUBLISHED OPINION |

BIRK, J.[1] – Kari McFarland appeals the trial court's order awarding spousal maintenance to her former spouse, Jerrol McFarland.[2] We affirm the trial court's decision to award maintenance, but we conclude the trial court erred to the extent its order does not establish any temporal limit on the maintenance award, and we remand with instructions to revise the award accordingly. We deny Jerrol's request for attorney fees on appeal.

I

Kari and Jerrol were married in September 2015. In July 2022, Kari petitioned for dissolution of the marriage.

The trial court held a three day bench trial on the petition for dissolution. Because the parties reached a settlement agreement regarding property

---

[1] Judge Birk is serving in Division Two of this court pursuant to RCW 2.06.040.

[2] We refer to the parties by their first names for clarity. We intend no disrespect.

distribution, the issues remaining at trial were the parenting plan and spousal support. The majority of the testimony at trial was relevant to the parenting plan and testimony specific to spousal support was limited.

Jerrol testified that his property was a farm where he raised rabbits for meat and chicken for eggs. He testified that the farm made an annual[3] income of approximately $2,700. Jerrol explained he had no other income because he was unable to work after being crushed by a tree. Kari objected to a portion of Jerrol's testimony regarding his ability to work:

> [Jerrol]: In 2019 I was crushed by a tree on the Centralia campus, and I have not been returned to—I've not been allowed to return to work yet by the doctors.
>
> . . . .
>
> [COUNSEL]: Objection; hearsay with regard to what the doctors have said.
>
> THE COURT: Overruled.

Jerrol received a settlement in 2023, which had all been used for expenses and legal fees. Jerrol testified he had not been employed since 2018 and had no income except what he made on the farm.

In her rebuttal testimony, Kari testified that Jerrol was not too disabled to work. Kari testified that she had seen him working 14 to 16 hours days on the farm repairing fences, moving heavy materials and equipment, unloading trailers of

---

[3] The child support schedule worksheets signed by the parties and incorporated into the superior court's findings and conclusions about a marriage identify this approximate amount as Jerrol's gross monthly income.

2

livestock feed, and tending to animals.[4]  Kari also testified that, before his accident, Jerrol was a commercial truck driver earning approximately $65,000 a year.  Kari had observed Jerrol sitting at his computer for up to 14 hours a day.  Kari also explained that she had previously been ordered to pay $1,000 a month in spousal support for three months, during which time she was unable to pay all of her expenses or make minimum payments on her credit cards.

The trial court found the marriage was irretrievably broken and granted the petition for dissolution.  The trial court entered findings of fact distributing the parties' property consistent with the settlement agreement reached by the parties.  In regards to spousal support, the trial court found,

> Spousal support should be ordered because [Jerrol] has a need and [Kari] has the ability to pay.  Based upon the evidence presented, the court finds [Jerrol] has not been medically released to work.

The trial court also entered final orders including a final dissolution decree, a final parenting plan, and child support orders.  It awarded Jerrol $1,000 per month in spousal support.  The trial court ordered that spousal support would continue as long as Jerrol was medically unable to work or there was some other change of circumstances:

> Spousal support may be modified or terminated if circumstances change.  As of now, [Jerrol] cannot work according to his doctor.  He must update his doctor's notice every three months.  If [Jerrol] is released to work and able to earn an income, a petition may be filed to change the spousal maintenance.  He must also provide proof of any disability benefit determination, including any dollar amount, within five days of receiving notice of it.

---

[4] Kari also testified that she assisted Jerrol in completing self-employment plans for the Department of Social and Health Services and had those self-employment plans admitted into evidence.  However, those exhibits were not designated as part of the record on appeal.

Kari appeals the superior court's award of spousal support.

II

Kari argues that the superior court erred by finding that Jerrol was unable to work, arguing his testimony that he was unable to work was inadmissible hearsay. She also challenges the trial court's award of spousal maintenance. Finding no error, we affirm.

A

Kari argues that the superior court erred by finding that Jerrol was unable to work, arguing his testimony that he was unable to work was inadmissible hearsay.[5] We disagree.

We review a trial court's decision on a hearsay objection for an abuse of discretion. *State v. Mason*, 160 Wn.2d 910, 922, 162 P.3d 396 (2007). However, we review whether a statement is hearsay de novo. *State v. Edwards*, 131 Wn. App. 611, 614, 128 P.3d 631 (2006). " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Generally, hearsay is inadmissible unless an exception applies. ER 802.

---

[5] Kari also argues that the superior court erred by ignoring undisputed testimony regarding Jerrol's ability to work and by finding that Jerrol was not able to work when there was evidence Jerrol was able to work. As an initial matter, we do not review the trial court's determinations regarding the credibility of the evidence. *In re Marriage of Ecklund*, 143 Wn. App. 207, 212, 177 P.3d 189 (2008) ("We do not review credibility determinations."). Further, although Kari offered testimony regarding her personal observations regarding Jerrol's physical activity, she offered no testimony related to whether Jerrol had been medically released to return to work. Accordingly, Kari's arguments regarding her own testimony are unpersuasive.

Here, the testimony Kari objected to was not hearsay. Jerrol testified that he was not medically cleared to work, which is a statement based on his own personal knowledge about his work status. The placement of restrictions by medical personnel on his return to work was a fact within Jerrol's personal knowledge. Jerrol did not testify to any statement made by a doctor or other medical professional nor offer any statement for the truth or sincerity thereof. Because Jerrol's testimony was not hearsay, the superior court did not abuse its discretion by overruling Kari's objection. Accordingly, the superior court did not err by considering Jerrol's testimony that he was not medically cleared to work.

Moreover, any error would be harmless. *See Harke v. Harke*, 29 Wn. App. 2d 866, 875, 543 P.3d 829 (2024) ("A harmless error is a trivial, formal, or academic error that did not prejudice the substantial rights of the party assigning it and did not impact the final outcome of the case."). In addition to testifying that he was not medically cleared to work, Jerrol testified to his injury, that he had not held employment since, and that his income was limited as stated above. This testimony and the inferences from it equally and independently supported the superior court's maintenance findings.

B

Kari also challenges the trial court's award of spousal maintenance. We affirm the trial court.

"[A] trial court exercises broad discretionary powers in awarding maintenance and its disposition will not be overturned on appeal absent a showing of a manifest abuse of discretion." *In re Marriage of Wilcox*, 3 Wn.3d 507, 517,

553 P.3d 614 (2024). " 'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.' " *Id.*

RCW 26.09.090(1) governs the award of spousal maintenance and provides, in relevant part,

> The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to misconduct, after considering all relevant factors including but not limited to:
>     (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
>     (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
>     (c) The standard of living established during the marriage or domestic partnership;
>     (d) The duration of the marriage or domestic partnership;
>     (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
>     (f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

The only limitation that RCW 26.09.090 places on the trial court's ability to award maintenance is that, after considering all the relevant factors, the amount and duration of maintenance be just. *Wilcox*, 3 Wn.3d at 519-20. A trial court abuses its discretion by awarding maintenance without fair consideration of the statutory factors. *Id.* at 521. But a trial court is not required to make specific factual findings on all of the factors. *In re Marriage of Anthony*, 9 Wn. App. 2d 555, 564, 446 P.3d 635 (2019). A trial court's findings should, as a general matter, "be

sufficient to suggest the factual basis for the ultimate conclusions." *In re Marriage of Monaghan*, 78 Wn. App. 918, 925, 899 P.2d 841 (1995).

First, Kari argues the superior court abused its discretion because it failed to consider the statutory factors for awarding maintenance. However, here, the trial court's findings and spousal maintenance award reflect consideration of the relevant statutory factors.[6] The trial court considered Jerrol's financial resources and Kari's ability to meet her needs, RCW 26.09.090(a), (f), as reflected in its findings related to Jerrol's need and Kari's ability to pay. And the trial court considered Jerrol's relevant physical condition, RCW 26.09.090(e), when it entered findings related to Jerrol being medically unable to work. Finally, the trial court was clearly aware of the length of the marriage, RCW 26.09.090(d), because it entered findings related to the start and end date of the marriage and there was extensive testimony about the parties' respective lifestyles, RCW 26.09.090(c), before and after the separation because of testimony related to the parenting plan. Kari has failed to show that the trial court failed to consider the relevant statutory factors.[7]

---

[6] To the extent that Kari argues that the trial court was required to enter specific findings on each statutory factor, this argument fails. *See Wilcox*, 3 Wn.3d at 522-23 (distinguishing the legislature's use of the broad term "consider" in RCW 26.09.090 with the prior case law which required the trial court to enter specific findings regarding a two-factor test). Nothing in RCW 26.09.090 requires the trial court to enter specific findings in order to award spousal maintenance.

[7] Moreover, we note that Kari has not raised any other argument that the trial court's spousal maintenance award was unjust, which is the only specific limitation on the trial court's award of maintenance under RCW 26.09.090. *Wilcox*, 3 Wn.3d at 520.

Second, Kari argues that the trial court erred by failing to order an end date for spousal maintenance because the parties had a short-term marriage. Kari argues that the trial court's spousal maintenance award should be treated as a permanent award of maintenance because it is possible that there will not be a change of circumstances and spousal maintenance will continue indefinitely. However, the trial court did more than simply allow spousal maintenance to be modified based on a change of circumstances. Because the trial court's award of maintenance was expressly conditioned on Jerrol continuing to provide proof of his medical inability to work and disability benefits, we disagree that the trial court intended that its award should be considered a permanent award of maintenance.

Further, although Kari cites to a case in which the long term duration of the marriage was a consideration in both the equitable distribution of property and how the distribution of property may affect spousal maintenance, Kari cites no case that requires the duration of the marriage to dictate the terms of the trial court's spousal maintenance award. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). And the cases cited by Kari predate our Supreme Court's opinion in *Wilcox*, which clarifies that principles of awarding alimony—the common law predecessor to statutory spousal maintenance—do not dictate the award of spousal maintenance under RCW 26.09.090. Instead, as noted above, the only limitation on the trial court's

8

discretion to award spousal maintenance under RCW 26.09.090 is that the award be just. *Wilcox*, 3 Wn.3d at 520.

However, because we conclude the trial court did not intend to make a permanent award of maintenance, we conclude that the trial court erred in failing to specify an end date for the award of maintenance. The award was based primarily on Jerrol's continued inability to work and subject to his continuing demonstration of that inability. The court's requirement that Jerrol establish his continuing inability to work every three months implies a shorter intended period of maintenance than a permanent award, and further indicates the trial court did not intend for maintenance to continue indefinitely should Jerrol never recover his predisability capabilities. But the trial court did not specify the period of maintenance. To that extent, the trial court erred. The trial court considered the relevant statutory factors and awarded spousal maintenance with terms that reflected that consideration. Therefore, the trial court did not abuse its discretion in making its award of spousal maintenance, but it erred in failing to set an end point for an award that is not a permanent one.

We affirm the trial court's final orders awarding spousal maintenance to Jerrol, except that we direct the trial court on remand to specify a time period for its award of spousal maintenance.

C

Jerrol also requests attoney fees on appeal. We deny Jerrol's request for attorney fees on appeal.

RAP 18.1(a) allows us to award attorney fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees." RCW 26.09.140 provides,

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.
> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.

After considering the financial declarations submitted by the parties, as well as the circumstances of this case, we exercise our discretion and deny Jerrol's request for attorney fees on appeal.

We affirm the superior court but remand to specify a time period for its award of spousal maintenance, and we deny Jerrol's request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Birk, J.

WE CONCUR:

_____
Cruser, C.J

_____
Veljacic, J.

10