IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of<br>JOSEPH CHARLES ANTHONY,<br><br>Appellant,<br><br>and<br><br>PENNY LEE ANTHONY,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 79065-0-I<br><br><br>UNPUBLISHED OPINION<br><br><br><br><br>FILED: July 1, 2019 |

SCHINDLER, J. — Joseph Anthony appeals the amount and duration of maintenance awarded to Penny Anthony. Joseph also contends the "Qualified Domestic Relations Order" (QDRO) does not accurately reflect the trial court's decision. The court did not make a finding on the income of the parties, and the court did not address the ability of Joseph to meet his needs and financial obligations while meeting those of Penny or enter written findings on the statutory factors. We affirm the decision to award maintenance. But we remand to determine the amount and duration of maintenance after making a finding on the income of the parties and consideration of the statutory factors. Penny concedes the QDRO is not accurate. On remand, the court shall enter a QDRO that accurately reflects the court's ruling. We also direct the court on remand to address Penny's request on appeal for attorney fees under RCW 26.09.140.

FACTS

Joseph Anthony and Penny Anthony married on June 19, 1987. Joseph was 24-years-old and Penny was 22-years-old.[1] Penny did not complete the eighth grade and does not have a general education development (GED) certification. During the marriage, Penny stayed home and took care of the four children.

Joseph served in the Marine Corps from March 27, 1984 until July 31, 2006. Joseph was 43-years-old when he retired from the Marine Corps in 2006. In 2007, Joseph started working at Lynden Transport Incorporated (LTI) as a short-haul truck driver.

Joseph and Penny separated in August 2012. On July 6, 2015, Joseph filed a petition for dissolution of the marriage. Joseph requested a "fair and equitable division" of the community and separate property and "all debts and liabilities." Joseph agreed "[m]aintenance will be paid" to Penny.

Joseph and Penny testified at trial. At the time of trial, Joseph was 53-years-old and Penny was 51-years-old. The court admitted a number of exhibits into evidence, including the financial declarations filed by Joseph and Penny and financial documents, including LTI W-2s and pension documentation. In his financial declaration, Joseph states his total gross monthly income is $7,807. He lists monthly wages of $3,504, overtime of $2,086, and military disability of $817. Joseph receives monthly military retirement income of $2,500. In his financial declaration, Joseph allocates $1,400 of the military retirement income to himself and $1,100 to Penny. Joseph imputed $1,600 in income to Penny. Joseph stated his total monthly expenses were $3,995. In her

---

[1] We refer to the parties by their first names for purposes of clarity and mean no disrespect by doing so.

2

financial declaration, Penny stated she has no income and total monthly expenses of $3,566.

Joseph testified his financial declaration was accurate and he routinely worked overtime at LTI, earning approximately $2,000 a month. Joseph agreed the LTI W-2s showed his income had increased every year since 2012. Joseph testified he works approximately 15 hours a week in overtime. Joseph said he works that amount of overtime to pay bills and does not want to continue working the same amount of overtime. Joseph testified he could pay $2,500 a month in maintenance to Penny and pay his expenses. Joseph testified the amount in his LTI 401(k) retirement account in 2014 was $26,000.

Penny testified she receives $3,050 each month from Joseph and $500 a month in rent from her adult son Michael. Penny testified she has no retirement savings and wanted to remain in the family house. Penny testified that she planned to get her GED and then apply for minimum wage jobs.

The court ruled at the conclusion of the trial. The court considered the statutory factors in dividing the assets and liabilities under RCW 26.09.080. The court awarded Penny the family home. The court determined the equity in the house was $51,000 and awarded Joseph one-half of the equity of $25,500. The court awarded Penny one-half of the military pension and the LTI "pension equity plan" retirement account. The court ruled the award of the retirement accounts would offset Joseph's half of the home equity.

The court identified and considered the statutory factors under RCW 26.09.090 in awarding maintenance to Penny. The court ruled Penny should receive maintenance

for 20 years as follows: $2,500 per month for the first five years, decreased by $500 each of the next five-year periods.

Joseph filed a motion for clarification of the division of property, the valuation date for the family home and the pensions, and the maintenance award "in relation to the parties' incomes and their portions of the military retirements and the husband's overtime."

On April 18, 2017, the court entered the decree of dissolution and written findings of fact and conclusions of law. The court awarded the family home to Penny. The court offset Joseph's equity in the house with the LTI retirement account. The court ordered Penny to refinance or sell the house in the next 18 months. Exhibit A, "Real Property," states:

> Penny Anthony shall receive the marital home located at 8378 Glennwood Rd. SW, Port Orchard, WA 98367. Tax parcel no.: 222301-2-054-2003. Mr. Anthony shall sign a Quit Claim Deed and Real Estate Excise Tax Affidavit to make this possible.
> The [court] accepts the appraisal done by Mr. Mokert and finds that there is $51,000 worth of equity in the family home. Each party shall receive half of the equity in the amount of $25,500 each.
> Mr. Anthony's portion of the equity from the home in the amount of $25,500 shall be awarded via an offset of the division of his LTI retirement account. (See Exhibit B re: Division of Retirement Accounts)[.]
> Mrs. Anthony has 18 months to refinance the home, or she must put it on the market for sale.

The court awarded Penny half of the retirement accounts. Exhibit B states, in pertinent part:

> 2. LTI Retirement Account: Each party is to receive half of the LTI Retirement Account accrued from the date of marriage through November 1, 2016. However, this is subject to an offset to account for Mr. Anthony's portion of the home equity in the amount of $25,500.
>
> To obtain the proper division in the [Qualified Domestic Relations Order] of the LTI Retirement Account, the balance as of November

4

1, 2016, will be used, and Mr. Anthony's award of $25,500 (his share of the home equity) will remain in the account prior to splitting the remaining funds. The remaining balance in the account will then [be] divided by 2 to split the remainder of the funds equally between the parties.

3.   Military Retirement:   Mrs. Anthony is awarded her portion of Mr. Anthony's military retirement accrued from June of 1987 until Mr. Anthony's military retirement date, minus his disability payments as they are not subject to division.

4.   401(k) Retirement:   Mrs. Anthony is awarded half of the 401(k) accrued from June of 1987 until August of 2012.

The court awarded Penny maintenance. The findings of fact and conclusions of law state, "Spousal support should be ordered for the following reasons":

1)   This was a 25 year long term marriage that was mutually beneficial.

2)   Per In re: the Marriage of Rockwell, [141 Wn. App. 235, 170 P.3d 572 (2007),] the Court must put the parties in roughly equal positions post dissolution.

3)   Per RCW 26.09.090, the Court must look at the following factors: a) the financial resources of the parties — present and future, b) the time necessary for the requesting spouse to acquire sufficient education or training to find employment, c) the standard of living established during the marriage, d) the duration of the marriage, e) the age as well as physical and emotional condition of each party, as well as the financial obligations of the spouse seeking maintenance, and f) the ability of the spouse from whom maintenance is sought to meet his/her obligations while meeting those of the spouse seeking maintenance.

4)   The Court finds that upon examination of the above factors Mrs. Anthony should be awarded spousal support for 20 years, starting at $2,500 per month and decreasing by $500 every 5 years.

5)   This award is fair and equitable under the circumstances of this case, Washington statutes and case law.

The court granted the motion for reconsideration of the award of maintenance in part. The court amended the decree of dissolution to state maintenance "will end when

5

either spouse dies, or the spouse receiving support gets married or registers a new domestic partner." The court entered an amended decree on June 5, 2017.

ANALYSIS

Joseph seeks reversal of the amount and duration of maintenance. Joseph contends (1) the court based the maintenance award on incorrect income projections and erred in concluding that under In re Marriage of Rockwell, 141 Wn. App. 235, 170 P.3d 572 (2007), "the Court must put the parties in roughly equal positions post dissolution" rather than considering the statutory factors in awarding maintenance to Penny, and (2) the "Qualified Domestic Relations Order" (QDRO) is inconsistent with the court's ruling.

Calculation of Income

Joseph argues the court based the award of maintenance on inaccurate income projections.

During the oral ruling on the division of property, the court described a "hypothetical[ ]" calculation of the financial position of the parties postdissolution. In addressing property distribution, the court cited Rockwell "with regards to the just and equitable distribution of property and going beyond, as [Penny's attorney] points out, kind of the post divorce economic circumstances of the parties." The court addressed the parties' "substantial financial disparities in terms of the potential to generate income."

> In looking at the issues kind of post divorce and post dissolution, the economic circumstances, it's completely understood that Mr. Anthony likely will be working less and not more. He's 53. He's correct — I think, he provided credible testimony with regards to his job. It is a difficult job. It's — it's taxing both mentally and physically driving a truck.
> He's 53. As he continues to get older, that will become more and more of an issue. He's certainly entitled to do things outside of work, and

so the notion that he would continue to work 60 hours a week — perhaps in the short term . . . but in the long term that's not particularly realistic. And I don't think that he's obligated [to] be working 60 hours a week.

. . . .

As I do the math, just I like to do kind of in my own mind kind of hypotheticals and whatnot, although I have real numbers here.

For example, if over the next ten years instead of grossing 115,000 a year, Mr. Anthony were to gross $85,000 a year, so $30,000 less per year because he decides to work less, that still is a total gross income of $850,000 over the next ten years. That would take him to 63, at which point he may be contemplating retirement or whatnot.

If Ms. Anthony — and we will talk about her employment situation — but if she were to work a minimum wage job — well, actually I did $10 an hour, minimum wage will likely increase — but at $10 an hour, full time, over the next ten years that would be $200,000 gross income.

So we're talking about even if Ms. Anthony were to work for ten years at a minimum wage job and Mr. Anthony were to decrease his hours and his gross income were to decrease [$]30,000 a year, we're still talking about over the next ten years a difference of $650,000 of income.

There's no doubt, there's no question that Mr. Anthony is in a far better position to generate income than Ms. Anthony.

Joseph contends his projected 10-year income is $679,800, not $850,000; and Penny's income would be $383,680, not $200,000. Joseph argues the court deducts $30,000 a year for overtime but erroneously allocates the entire amount of his military pension to him in the hypothetical projections. We agree the hypothetical does not appear to take into account allocation of the pension. But as the court expressly noted, the projection is a hypothetical example and "I have real numbers here." The record shows the court did not base the award of maintenance on the hypothetical projections. But the court did not make a finding on the actual income of the parties. We remand to determine the income for each party for purposes of awarding maintenance. On remand, the court shall determine the income of each party and enter a specific finding on income before considering the statutory factors for maintenance.

7

Award of Maintenance

RCW 26.09.090 controls the award of maintenance. The following are the nonexclusive statutory factors under RCW 26.09.090(1):

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently . . . ;
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c) The standard of living established during the marriage or domestic partnership;
> (d) The duration of the marriage or domestic partnership;
> (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
> (f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

We review a trial court's award of maintenance for abuse of discretion. In re Marriage of Valente, 179 Wn. App. 817, 822, 320 P.3d 115 (2014). The court has broad discretion to award maintenance. In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Larson, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013).

Absent a showing of manifest abuse of discretion, we will not disturb the award of maintenance. In re Marriage of Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984). "The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of the relevant factors, the award must be just." Bulicek, 59 Wn. App. at 633; In re Marriage of Wright, 179 Wn. App. 257, 269, 319 P.3d 45 (2013); Washburn, 101 Wn.2d at 182. While the trial court must consider the factors listed in RCW 26.09.090(1), it is not required to make specific factual findings on all of the factors. In

8

re Marriage of Mansour, 126 Wn. App. 1, 16, 106 P.3d 768 (2004). An award of maintenance is "a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time." Washburn, 101 Wn.2d at 179. Ultimately, the court's main concern must be the parties' economic situations postdissolution. Washburn, 101 Wn.2d at 181.

Maintenance not based on a fair consideration of the statutory factors constitutes an abuse of discretion. In re Marriage of Crosetto, 82 Wn. App. 545, 558, 918 P.2d 954 (1996). We treat the trial court's findings of fact as verities on appeal, so long as they are supported by substantial evidence. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). " 'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." Chandola, 180 Wn.2d at 642.

Joseph challenges the conclusion of law that states, "Per In re: the Marriage of Rockwell, . . . the Court must put the parties in roughly equal positions post dissolution."

On reconsideration, Joseph argued the court erred in entering the conclusion of law that states Rockwell requires the court to "put the parties in roughly equal positions post dissolution." Citing Wright, 179 Wn. App. at 262, Joseph asserted Rockwell does not mandate that the trial court place the parties in "roughly equal financial positions for the rest of their lives" by awarding long-term future maintenance.

In In re Marriage of Kaplan, 4 Wn. App. 2d 466, 474, 421 P.3d 1046, review denied, 191 Wn.2d 1025, 428 P.3d 1184 (2018), we rejected the argument that our decision in Rockwell means "the trial court must follow the 'overarching premise' that

because of their long-term marriage, the parties must be placed in roughly equivalent financial positions for the rest of their lives."

> Heidi's argument is based on an overly narrow reading of the statement made by this court in In re Marriage of Rockwell, 141 Wn. App. 235, 243, 170 P.3d 572 (2007), that in long-term marriages of over 25 years "the trial court's objective is to place the parties in roughly equal financial positions for the rest of their lives."
>
> Rockwell affirmed the trial court's unequal distribution of community property after a long-term marriage. The trial court did not, however, limit its consideration to the length of the marriage or conduct a mathematical analysis to ensure equal financial positions for the rest of the parties' lives. Instead, the trial court examined a variety of factors in reaching its decision to award an unequal distribution.

Kaplan, 4 Wn. App. 2d at 474-75.

In Kaplan, we emphasized that duration of marriage is only one of the statutory factors that the trial court must consider. Kaplan, 4 Wn. App. 2d at 476-77. We held, "An objective of placing the parties to a long-term marriage in 'roughly equal' financial positions is not a mandate for trial courts . . . . The trial court must still exercise its discretion to consider all of the statutory factors." Kaplan, 4 Wn. App. 2d at 475-76.

The record does not support the argument that the court relied on Rockwell. At the hearing on the motion for reconsideration, the court clarified that it did not rely on Rockwell and considered only the statutory factors in awarding maintenance:

> I don't think it was eloquently put when I said I'm ordering 20 years of maintenance and then I immediately referenced Rockwell.
> [ ]
> . . . Rockwell is a property case, not a maintenance case. . . . I outlined all the factors that one has to look at for distributing property. I also outlined all the factors that one has to look at in determining maintenance.
>
>     . . . .

> There's no requirement in the statutes or case law that the trial court isolate the determination of maintenance from the property division.

But see Kaplan, 4 Wn. App. 2d at 483 (quoting In re Marriage of Estes, 84 Wn. App. 586, 593, 929 P.2d 500 (1997)) (" '[T]he trial court may properly consider the property division when determining maintenance, and may consider maintenance in making an equitable division of the property.' ").

Here, unlike in Rockwell, the record shows the court considered the statutory factors in its oral ruling. The court considered Penny's financial circumstances:

> Ms. Anthony is the one seeking the support here. At the present time . . . her — ability to be employed, in my mind, remains somewhat of a question. She — she has never been — I don't want to make this sound the wrong way. She hasn't had meaningful gainful employment, meaning prolonged periods of time of employment. . . .
> . . . [A]t this point, if she didn't receive any financial support tomorrow, she wouldn't have any ability to meet her needs. And I . . . think it goes beyond tomorrow.

The court considered Penny's likelihood of employment. "[P]eople can be employed without a GED, but it really is difficult. So that's something that I think Ms. Anthony can do, and should do, but that doesn't alleviate the need for what I consider to be significant spousal support." The court considered Penny's standard of living. "Just by the very nature of the relationship dissolving, that invariably is going to reduce the standard of living likely for both parties." The court also considered the duration of the marriage, "[W]e have a 25-year marriage and that's significant"; and Penny's age, her physical and emotional condition, and her financial obligations. "We have to be honest that even at 25 or 26 [years old] it's difficult to find gainful employment sometimes, and at 51 it's going to be even more difficult."

Although the court cites RCW 26.09.090(1)(f), the record shows the court did not address Joseph's ability to pay maintenance or his needs and financial obligations.[2] On remand, the court shall enter written findings on the statutory factors and specifically address Joseph's ability to continue to work overtime and to pay maintenance and meet his needs and financial obligations.

Qualified Domestic Relations Order

Joseph contends the QDRO does not reflect the trial court's ruling. The court ruled:

> Each party is to receive half of the LTI Retirement Account accrued from the date of marriage through November 1, 2016. However, this is subject to an offset to account for Mr. Anthony's portion of the home equity in the amount of $25,500.

> To obtain the proper division in the QDRO of the LTI Retirement Account, the balance as of November 1, 2016, will be used, and Mr. Anthony's award of $25,500 (his share of the home equity) will remain in the account prior to splitting the remaining funds. The remaining balance in the account will then [be] divided by 2 to split the remainder of the funds equally between the parties.

The LTI retirement account was valued at $66,033.08 on November 1, 2016. Joseph and Penny's one-half share would have been $33,016.54 each. Offsetting Joseph's share of the home equity results in the following calculation:

> Joseph: $33,016.54 plus $25,500.00 equals $58,516.54
> Penny: $33,016.54 minus $25,500.00 equals $7,516.54.

Penny concedes the QDRO erroneously states she is entitled to $20,266.54, resulting in an overpayment to her by approximately $12,750.00. We remand to enter a QDRO that accurately reflects the court's ruling.

---

[2] The court stated Joseph "earns a significant income" but "it's fair to say that maybe not in the short term but in the long term that's going to be reduced."

Attorney Fees

Penny requests attorney fees on appeal under RCW 26.09.140. RCW 26.09.140 gives the court the discretion to award attorney fees. The court must consider the party's relative need versus ability to pay. In re Marriage of Shellenberger, 80 Wn. App. 71, 87, 906 P.2d 968 (1995). On remand, the trial court shall determine whether to award attorney fees to Penny under RCW 26.09.140.

We affirm the decision to award maintenance but remand to determine the amount and duration of maintenance after making a finding on the income of the parties and consideration of the statutory factors. Because Penny concedes the QDRO is not accurate, on remand, the court shall enter a QDRO that accurately reflects the court's ruling. We also direct the court to address Penny's request for attorney fees under RCW 26.09.140.[3]

_Schindler, J._

WE CONCUR:

_Mann, A.C.J._          _Appelwick, C.J._

---

[3] For the first time on appeal, Joseph requests reassignment to a new judge on remand. The remedy of reassignment has limited availability. " '[E]ven where a trial judge has expressed a strong opinion as to the matter appealed, reassignment is generally not available as an appellate remedy if the appellate court's decision effectively limits the trial court's discretion on remand.' " Kaplan, 4 Wn. App. 2d at 487 n.4 (quoting State v. McEnroe, 181 Wn.2d 375, 387, 333 P.3d 402 (2014)). "Only 'where review of facts in the record shows the judge's impartiality might reasonably be questioned' will the appellate court remand the matter to another judge." Kaplan, 4 Wn. App. 2d at 487 n.4 (quoting State v. Solis-Diaz, 187 Wn.2d 535, 540, 387 P.3d 703 (2017)). After reviewing the record in this case, we conclude the trial court's impartiality cannot "reasonably be questioned" and decline to order reassignment on remand.