IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Marriage of | No. 83532-7-I |
| BARRY DAVID ARONSON, | DIVISION ONE |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| JENNIFER ARONSON,[†] | |
| Appellant. | |

SMITH, A.C.J. — This is Jennifer Cross's third appeal related to the dissolution of her marriage to Barry Aronson. Cross now challenges the trial court's orders granting her motion to modify Aronson's spousal maintenance obligations and denying her motion for reconsideration. She asserts that the maintenance award lacks factual support in the record and that the court improperly considered non-statutory factors in setting support. We affirm.

FACTS

Jennifer Cross and Barry Aronson married in 1994 and separated in 2014. They have two adult children. At the time of the dissolution trial, Aronson was employed at Microsoft as a software engineer, earning a base salary of $185,000 plus variable performance bonuses. Cross completed doctoral coursework at

---

[†] At the time of the dissolution, Appellant's name was Jennifer Aronson. Appellant is now known as Jennifer Cross. Since recent court documents refer to her by that name, we will do so in this opinion.

Harvard University, but did not work outside the home during the marriage and is now medically disabled.

In June 2016, the trial court entered findings of fact, conclusions of law, and a decree of dissolution. The court largely agreed with Cross' characterization of the parties' property. Aronson received his checking account, car, personal property, separate inheritance, airline miles, and any future Microsoft stock awards. The court awarded Cross the remaining community and separate property, including bank accounts and retirement accounts and ordered Aronson to share all Microsoft bonuses with her equally and to maintain a life insurance policy listing her as the beneficiary. After finding that Cross "has significant medical issues that render her unable to work a full-time job," the court ordered Aronson to pay $5,200 in spousal support, to be reduced to $4,200 after two years based on the expectation that her health would improve. The court also awarded attorney fees to Cross, to be paid from Aronson's unvested Microsoft stock awards. Following Cross's motion for reconsideration, the court increased Cross's monthly maintenance and ordered Aronson to split all future stock awards and bonuses with her.

Cross appealed and Aronson cross-appealed. We held that the trial court failed to conduct the proper analysis for characterizing the unvested Microsoft stock awards as separate or community property and remanded to the trial court to recharacterize the stock options and to enter judgment for Cross's attorney fees. In all other respects, we affirmed. See In re Marriage of Aronson,

No. 75734-2-I, slip op. at 1 (Wash. Ct. App. Sept. 4, 2018) (unpublished), https://www/courts.wa.gov/opinions/pdf/757342.PDF.[1]

Aronson was laid off from Microsoft in 2017, and as a result many of his stock awards never vested. On remand, the trial court recharacterized the vested stock awards as part community and part separate. In entering an attorney fee judgment against Aronson, the court deducted the amount of Cross's previous stock award from the amount Aronson owed her for attorney fees. Cross again appealed, arguing that the court erred when it recharacterized the unvested stock options and redistributed them for her award of attorney fees. We rejected Cross's claims and awarded attorney fees to Aronson based on Cross's frivolousness and intransigence in challenging the trial court's discretion in entering a fair, just, and equitable division of property. See In re Marriage of Aronson, No. 80352-2-I, slip op. at 1, 10 (Wash. Ct. App. July 20, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/803522.pdf.[2]

Meanwhile, Cross's health continued to decline. In October 2018, Cross's primary care physician, Dr. Sadia Habib, concluded that Cross is "unable to work at this time" because of multiple chronic medical conditions and was unlikely to be able to return to work in the near future. And in May 2019, following a comprehensive functional capacity assessment, Dr. Claudia Kubesh similarly

---

[1] GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

[2] GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

determined that Cross's medical disabilities have rendered her "unable to work at all" and "extremely unlikely to be able to begin work in the future."

In May 2021, Aronson began working at Cisco Systems in San Jose, California, with a base salary of $224,000, a sign-on bonus of $44,800, and the opportunity to earn annual bonuses. In June 2021, Cross petitioned the court to modify spousal support based on her need and Aronson's ability to pay. Cross sought to increase maintenance from $5,700 to $7,200 per month and to award her an additional $1,000 per month or half the annual bonuses Aronson receives from his employer, whichever is greater. Cross argued that the 2018 and 2019 medical evaluations establish that she is completely and permanently disabled.

On July 16, 2021, the court granted Cross's motion and ordered maintenance to increase from $5,700 to $9,500, with $2,000 of that amount representing Aronson's "anticipated bonus, stock awards, health savings account, and other benefits." The order specified that, "[p]er the 2016 divorce decree, it has been the Court's intention that Jennifer Cross receive approximately half of Barry Aronson's income from all sources." The court, however, delayed implementation of the modified maintenance award pending an August 9, 2021 "review/reconsideration" hearing. Cross then asked the court to award her $11,833 in spousal support, plus half of stock awards.

At the August 9, 2021 hearing, the court indicated that it wanted to reach a resolution that would avoid further litigation between the parties. The court acknowledged that Cross has "significant physical limitations" but speculated that she may be "capable of earning some money on a part-time basis doing . . .

4

things that don't require her to be in a particular position for a significant period of time." After further argument, the court requested additional briefing on maintenance.

Aronson proposed that monthly maintenance be set at $6,000 and terminate after he turned 67 in 2024. He pointed out that he is 64 years old – far older than most software engineers – and does not anticipate being able to work for more than a few more years given his own health issues. He argued that he is effectively earning less now than he did at Microsoft and asserted that he will need to tighten his belt just to break even while paying Cross $6,000 per month. He asked that stocks and bonuses "be taken completely out of the equation" because they "have been a huge source of contention and litigation" and are not guaranteed. Aronson also suggested that Cross could potentially earn money tutoring children online from home.

Cross submitted a report from certified divorce financial analyst Kelly Deis that evaluated the parties' future financial situation under three maintenance scenarios: $9,500 per month for three years, $9,500 per month for eight years, or sharing Aronson's earned income and Social Security until he fully retires at age 80. The analysis found that only under the third scenario would Cross experience a positive cash flow for the next 20 years. In determining that Aronson had the ability to pay, Deis assumed that he would work full time at Cisco or equivalent until age 72 and then earn $180,000 per year as an independent consultant until age 80. Cross also submitted a September 27, 2021 medical assessment from Dr. Kubesh, who stated that Cross's condition is

"the same or worse today" than it was in 2019, thus rendering her "fully disabled and unemployable." Cross additionally provided an October 2021 career status assessment from consultant David Goodenough, who opined that Cross could not sustain "even a limited form of self-employment."

A hearing took place on October 22, 2021. Counsel for Cross asked that Aronson provide her with half of his maximum income until 2029. The court stated that it disfavored income sharing because it "gives endless opportunities for them to continue to litigate each other." The court opined that "the best way" to "get these scorpions in two different bottles" would be to establish maintenance payments as a fixed sum. Counsel for Cross agreed, and proposed that Cross receive $9,750 in basic support plus $28,000 per year as her share of Aronson's anticipated annual bonus. Cross also requested half of Aronson's Cisco sign-on bonus and life insurance in the amount of $1.7 million.

At the conclusion of the hearing, the court indicated that it was "trying to find a practical way to roughly divide the income between Mr. Aronson and Ms. Cross" so they would not need to "have something that requires a back and forth to prove [how] much income you've got and what you've got here and what bonuses you got and – and all this kind of stuff because it just results in endless litigation back and forth." The court awarded Cross monthly maintenance of $8,000 until Aronson turns 70 in 2027, then $5,000 per month until either of the parties dies. The court ruled that Cross would not receive any portion of stocks and bonuses Aronson may receive, except for half of Aronson's Cisco sign-on bonus. The court reasoned that $8,000 is "more than half of his take-home [pay]

but it's less than half of his total compensation, which I think is striking a reasonable balance." The court also ordered Aronson to carry a life insurance policy of $500,000 through his employer, listing Cross as the sole beneficiary. The written order was entered on November 22, 2021.

On December 8, 2021, the court denied Cross's motion for reconsideration. The court found that spousal support adequately provides for Cross's present and future needs, and comports with RCW 26.09.090. It further found that Cross is "incapable of working any regular full-time or part-time job for the foreseeable future based on her medical condition" but that "[s]he may be able to make some money from one-time engagements." The order specified that "[t]he court's decision is based upon the original dissolution trial and the court's findings and conclusions for that trial as well as all of the proceedings since that trial and all of the parties' filings in 2021 relating to contempt and to modification of maintenance."

Cross appealed.

ANALYSIS

Modification of Maintenance

Cross challenges the trial court's orders granting her motion to modify maintenance and denying her motion for reconsideration.

Maintenance awards are "flexible tool[s] by which the parties' standard of living may be equalized for an appropriate period of time." In re Marriage of Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984). We review a trial court's award of maintenance for abuse of discretion. In re Marriage of Mueller, 140 Wn.

7

App. 498, 510, 167 P.3d 568 (2007). A trial court abuses its discretion when its "decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). A decision is manifestly unreasonable when, given the facts and applicable legal standard, it is outside the range of acceptable choices. In re Marriage of Bowen, 168 Wn. App. 581, 586, 279 P.3d 885 (2012). It is based on untenable grounds if "the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." In re Marriage of Fiorito, 112 Wn. App. 657, 664, 50 P.3d 298 (2002). A trial court's denial of a motion for reconsideration is also reviewed for an abuse of discretion. Brinnon Grp. v. Jefferson County, 159 Wn. App. 446, 485, 245 P.3d 789 (2011).

RCW 26.09.090 governs an award of maintenance. In awarding maintenance, the court must consider the following statutory factors:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently . . . ;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
>
> (c) The standard of living established during the marriage or domestic partnership;
>
> (d) The duration of the marriage or domestic partnership;
>
> (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

8

(f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

RCW 26.09.090(1).

Cross argues that the trial court abused its discretion in permanently freezing maintenance at a level well below her expenses. She contends that clear and undisputed evidence establishes she is permanently medically disabled and cannot work, whereas Aronson can afford to pay maintenance after he retires. But Cross does not assign error to any specific findings, cite to the evidence submitted by the parties, or explain why no reasonable judge would have exercised its discretion as the trial court did here. Trial courts have considerable discretion as to the amount and duration of a maintenance award. In re Marriage of Luckey, 73 Wn. App. 201, 209, 868 P.2d 189 (1994). We will not substitute our judgment for the trial court's, weigh the evidence, or judge witness credibility. In re Marriage of Wilson, 165 Wn. App. 333, 340, 267 P.3d 485 (2011).

The record shows that the trial court considered the statutory factors in setting the award, including Cross's financial needs and inability to work and Aronson's ability to pay while meeting his own needs. Cross asserts that the court abused its discretion in failing to award her with a portion of Aronson's future stocks and bonuses. But bonuses are performance-based and therefore not guaranteed. In contrast, the court's $8,000 monthly maintenance award constitutes a 40 percent increase over her previous maintenance award and is not contingent on uncertain factors. The court awarded Cross more than half of

Aronson's after-tax income plus lifetime maintenance after he retires, as well as requiring him to carry a $500,000 life insurance policy for her benefit. The court reasoned that it "strik[es] a reasonable balance" to award Cross more than half of Aronson's take-home pay but less than half his total compensation. We cannot determine that this was an abuse of discretion.

Cross also asserts that the trial court appears to have imputed some income to her, even though the evidence is clear that she cannot work. This is so, Cross contends, because in its order denying reconsideration the court found she is "incapable of working any regular full-time or part-time job for the foreseeable future based on her medical condition" but "may be able to make some money from one-time engagements." The record does not support a finding that Cross has any ability to work, even in a limited capacity. And in entering its maintenance award, the court expressly found that Cross "has submitted documentation to the effect that she's completely disabled, and I'm not imputing any income to her and I'm not counting on her being able to get any kind of a regular job." Upon reconsideration, the court made no changes to the maintenance award. Thus, Cross has not shown that the court's finding upon reconsideration included imputation of any amount of income to her or that it influenced the award.

Cross next argues that the trial court failed to explain its logic for ultimately awarding less than it did in its July 16, 2021 order setting maintenance at $9,500 per month. But the order expressly stated that implementation was to be delayed pending a "review/reconsideration" hearing. The fact that the court revised a

temporary decision after considering additional information and briefing is not an abuse of discretion.

Cross also asserts that the record does not support the court's $500,000 life insurance policy award. She contends that the court should have ordered Aronson to carry a policy of at least $1.5 million, which is the total value of her support payments over the next two decades. But no authority supports the proposition that a court abuses its discretion by failing to secure a maintenance award with a life insurance policy, and we decline to create such a rule. The court did not abuse its discretion by requiring Aronson to carry a life insurance policy that covered more than 5 years of maintenance.

Cross also appears to argue that the court should have reserved on the issue of future maintenance to determine how much money Aronson makes once he turns 70, instead of simply ordering him to pay her $5,000 per month in perpetuity. But Cross did not request this below. And Cross may move to modify maintenance based on a change in circumstances in the future if necessary.

Lastly, Cross argues that the trial court impermissibly relied on nonstatutory factors in determining the maintenance award. Specifically, she contends that the court erred in focusing on setting a long-term maintenance award to foreclose future litigation. We disagree. Trial courts must consider all of the statutory factors, but the factors are nonexclusive, and courts are not required to make specific factual findings with regard to each factor. In re Marriage of Anthony, 9 Wn. App. 2d 555, 564, 446 P.3d 635 (2019). Under RCW 26.09.090, "the only limitation placed upon the trial court's ability to award

maintenance is that the amount and duration, considering all relevant factors, be just." Washburn, 101 Wn.2d at 178.

Cross relies on In re Marriage of Spreen, 107 Wn. App. 341, 347-48, 28 P.3d 769 (2001), but that case does not compel a different outcome. In Spreen, the court granted a motion to modify maintenance because of the wife's worsening mental health condition. 107 Wn. App. at 344-45. The court considered the factors under RCW 26.09.090(1) but arbitrarily determined that one additional year of maintenance was "all that [the wife] was 'entitled to.' " Spreen, 107 Wn. App. at 345. The Spreen court concluded that the trial court erred in limiting maintenance to one year because the award contradicted the evidence at trial and inappropriately relied on "social services or charity" as a factor under RCW 26.09.090(1). Id. at 349-50.

Here, unlike Spreen, the record shows that the trial court appropriately considered all of the relevant statutory factors when determining modified maintenance. And the record amply supports the court's stated concerns about the parties' litigious history and the benefits of crafting an award that would reduce future litigation costs. The court did not abuse its discretion in modifying maintenance or denying reconsideration.

Attorney Fees

Both Cross and Aronson seek attorney fees on appeal. RAP 18.1(a) allows us to award a party reasonable attorney fees and expenses if applicable law grants the right to such recovery. A court may award attorney fees and costs in a civil action if a statute, an agreement of the parties, or a recognized equitable

12

ground authorizes the award. In re Marriage of Greenlee, 65 Wn. App. 703, 707, 829 P.2d 1120 (1992).

Aronson requests fees on appeal under RAP 18.1(a) based on the frivolousness of Cross's appeal. "An appeal is frivolous if there are no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that there is no reasonable possibility of reversal." In re Marriage of Schnurman, 178 Wn. App. 634, 644, 316 P.3d 514 (2013). All doubts as to whether the appeal is frivolous should be resolved in favor of the appellant. Schnurman, 178 Wn. App. at 644. An appeal that is affirmed simply because the arguments are rejected is not frivolous. Id. Although we have rejected Cross's challenges, several of her claims are at least debatable. Resolving all doubts in Cross's favor, we decline to conclude that her appeal was so totally devoid of merit as to be wholly frivolous.

Aronson also requests fees under RAP 18.9(a) based on Cross's continuing intransigence. Intransigence is demonstrated by conduct such as litigious behavior, filing repetitive or excessive motions, or discovery abuses. In re Marriage of Wallace, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002). While Cross's decision to appeal may have been frustrating to Aronson, it does not rise to the level of intransigence.

Cross requests attorney fees under RCW 26.09.140, which allows us to award reasonable costs and attorney fees to either party on appeal "after considering the financial resources of both parties." An award of attorney fees under RCW 26.09.140 is based on consideration of " 'the parties' relative ability

13

to pay' " and " 'the arguable merit of the issues raised on appeal.' " <u>In re</u>

<u>Marriage of Muhammad</u>, 153 Wn.2d 795, 807, 108 P.3d 779 (2005) (quoting <u>In</u>

<u>re Marriage of Leslie</u>, 90 Wn. App. 796, 807, 954 P.2d 330 (1998)).  Although

Cross's arguments do not rise to the level of frivolousness or intransigence, she

again unsuccessfully challenged the trial court's reasonable exercise of

discretion.  We decline to award attorney fees to Cross on appeal.

     Affirmed.

Smith, A.C.J.

WE CONCUR:

Díaz, J.           Coburn, J.