# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>MONTEESHA REED,<br><br>    Respondent,<br><br>and<br><br>RICHARD REED, JR.,<br><br>    Appellant. | No. 82894-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Richard Reed challenges orders awarding maintenance to his former spouse, Monteesha Howard.[1]  We hold the trial court had a tenable basis to award maintenance for 24 months.  However, its decision ordering Reed to pay $1,860.20 per month does not evidence a fair consideration of the statutory maintenance factors and, in particular, the parties' respective financial resources and abilities to meet their own needs.  We affirm in part, reverse in part, and remand to the trial court to reconsider the monthly maintenance amount and enter findings with regard thereto.  We also reverse the final maintenance order's provision allowing Howard to obtain a judgment for the entire amount remaining to be paid if Reed fails to make a monthly payment in full.  We do not reach Reed's

---

[1] The trial court's final dissolution decree changed Monteesha Reed's name to Monteesha Howard.  Accordingly, and for clarity, we refer to her hereinafter as Howard.

challenges to the trial court's temporary maintenance order or its decision not to reconsider or vacate that order, as those challenges are moot.

I

Howard and Reed married in Maryland in 2015. At the time, Howard was on active duty in the U.S. Army, working as a medic. She was honorably discharged in August 2016, and the couple relocated to Washington in 2017.

On September 10, 2020, Reed received an offer of employment from Shasta Beverages, Inc. (Shasta) for a position as "Production Manager" with an annual salary of $90,000.00. Four days later, Howard petitioned to end the parties' marriage.

In April 2021, Howard filed a motion for temporary maintenance. Howard attested that after she and Reed moved to Washington, Reed was the family's sole provider while Howard was a full-time student, and her monthly net income was zero. With regard to Reed's income, Howard declared, "To my knowledge, [Reed] most recently began working for Shasta . . . where I believe he made about $90,000 per year." Howard approximated Reed's net monthly income as $5,768.00, which she based on an annual salary of $90,000.00. Howard requested maintenance, retroactive to the date of her petition, in the amount of $3,567.00 per month. That amount was equivalent to the total of Howard's monthly expenses listed in her financial declaration, including housing, transportation, utilities, personal, food, and household expenses.

The first commissioner who considered Howard's motion, at a hearing where Reed did not appear, indicated he was having "difficulty" in two respects.

2

First, the commissioner "didn't see any income information for [Reed] whatsoever." Second, "[t]here[ was] no explanation for why" Howard was unable to secure employment. The commissioner continued the hearing and entered an order directing Howard "to use best efforts to provide evidence of [Reed]'s income/financial situation for [the] next hearing."

Howard later filed a declaration "to provide the court with additional information related to [her] request for a temporary order for maintenance." She attested that she had "struggled to obtain documentation of [Reed]'s current income" and when she and Reed separated, she "had to leave the home suddenly" and "was not able to bring [her] computer with [her] at that time, which contained financial records documenting [Reed]'s income." She also attested that Reed had been unresponsive to her and her attorney's efforts to reach him, and that he had not responded to Howard's discovery requests. Howard attested that she was "working hard to obtain employment" but had "struggled due to an unpredictable job market." She stated, "I also need support as I pursue my degree, so that I can finally get to a point where I can earn more stable income and support myself independently." Reed did not file a response to Howard's motion for temporary maintenance.

In June 2021, the continued hearing on Howard's motion was held before a different commissioner. Howard appeared through counsel; Reed again was not present. The commissioner ruled, "So [Reed's] failure to respond means he agrees, so I'll sign the proposed order." The commissioner entered an order (Temporary Order) granting Howard's motion in full, i.e., directing Reed to pay

maintenance of $3,567.00 per month, retroactive to September 14, 2020. Accounting for a prorated amount for September 2020, the total back maintenance due under the Temporary Order was $30,377.00.

On September 27, 2021, Reed, who had recently obtained counsel, filed a motion for reconsideration of and to vacate the Temporary Order. Reed argued that the Temporary Order was "factually unsupported about the couple's finances." He also asserted that Howard's motion for temporary maintenance and the Temporary Order itself "were done without any actual notice to [Reed] and when his new counsel found it[,] it was too late to do anything."

Reed declared that the September 2020 offer he received from Shasta was later rescinded, and he never worked there. He testified similarly at trial. Howard testified in contrast she inquired of Shasta and was told Reed had worked there, but no longer did. Reed declared that he had been a laborer "for it seems like forever" and that "most of the time since the divorce was filed 9/14/20 [he] had been completely unemployed in COVID." He declared that he found a job at Georgia Pacific in April 2021, but given his monthly expenses and debt payments, "[t]here is no way on God's green earth [he] could pay any maintenance and certainly not $3567 per month and now face a new debt from it over $30,000." However, Reed testified at trial he did not have a recent pay stub to verify his representations about his earnings. The trial court denied a posttrial effort by Reed to introduce new documentary evidence concerning his earnings, a ruling Reed does not challenge on appeal.

In October 2021, the parties appeared for a bench trial.  The sole disputed issues for trial were (1) Reed's pending motion to reconsider or vacate the Temporary Order, (2) Howard's request for ongoing maintenance, and (3) the allocation of an approximately $4,000.00 debt associated with the parties' tenancy in their former rental home (move-out debt).

After trial, the court allocated the move-out debt to Reed and denied Reed's motion to reconsider or vacate the Temporary Order.  With regard to maintenance, the court observed that Howard "needs, based on the marriage and the time needed for her to graduate . . . some resources to be able to complete her education."  But it also observed that Reed then owed Howard $44,645.00 under the Temporary Order, and taking that and the move-out debt into consideration, as well as Reed's "assets, his income, and all of those factors that sort of go towards his income and cash flow" and "the ability of [Reed] to meet his needs," "Reed is going to have difficulty in paying . . . whatever maintenance the court would order . . . for the next two years in addition to making payments on all [his] debt." Accordingly, the court treated the $44,645.00 owing under the Temporary Order as "equivalent . . . to the amount of maintenance that is owing to [Howard] given all the factors that are being considered," and it ordered Reed to pay that amount over the next two years, at $1,860.20 per month.  The court also ordered that if Reed missed a payment, Howard could at her option obtain a judgment for "the total amount remaining to be paid" (acceleration clause).  Reed appeals.[2]

---

[2] It appears that Reed did not properly serve Howard with the notice of appeal.  According to the declaration of service filed with this court, Reed served only Howard's former counsel, who had already withdrawn pursuant to CR 70.1(b).

II

Reed devotes his appellant's brief almost entirely to challenging the Temporary Order and the trial court's refusal to reconsider or vacate that order. Under RCW 26.09.060(10)(c), a temporary maintenance order generally "[t]erminates when the final decree is entered." Although "[d]elinquent support payments accrued under an order for temporary support remain collectible and are not extinguished when a final decree is entered," that is not the case if "the decree contains specific language to the contrary." RCW 26.09.060(11).

Here, the trial court's final maintenance order provided that "maintenance [would] be satisfied" if Reed paid maintenance for 24 months. The court expressly provided Reed's obligation to pay maintenance on a prospective basis superseded Reed's delinquency under the Temporary Order.[3] The Temporary Order was superseded by the final order. Consequently, Reed's challenges to the Temporary Order, including the trial court's refusal to reconsider or vacate it, are moot, and we do not reach them. See In re Marriage of T, 68 Wn. App. 329, 336, 842 P.2d 1010 (1993) ("[a]n issue is moot if a court can no longer provide effective relief and

---

However, Howard has since filed a declaration in which she confirmed she is aware of this appeal and requested an extension of time to file a brief of respondent. Despite having been granted an extension, Howard did not file a respondent's brief. "A respondent who elects not to file a brief allows his or her opponent to put unanswered arguments before the court, and the court is entitled to make its decision based on the argument and record before it." Adams v. Dep't of Lab. & Indus., 128 Wn.2d 224, 229, 905 P.2d 1220 (1995).

[3] We disagree with Reed's assertion that the trial court's final order "denied future maintenance to [Howard]." Cf. In re Marriage of Thompson, 97 Wn. App. 873, 877, 988 P.2d 499 (1999) (interpretation of a dissolution decree is a question of law).

if the issue presented is purely academic" and "appellate courts normally will not decide a moot issue").

III

Notwithstanding Reed's focus on the temporary order, the thrust of Reed's argument on appeal is that "maintenance should never [have] be[en] ordered here given the parties' financial situations," whether on a temporary or final basis. We interpret Reed's argument as further challenging the trial court's final order.

A

"Maintenance is 'a flexible tool' for equalizing the parties' standard of living for an 'appropriate period of time.' " In re Marriage of Wright, 179 Wn. App. 257, 269, 319 P.3d 45 (2013) (quoting In re Marriage of Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984)). RCW 26.09.090(1) governs maintenance and directs the court to consider the following, nonexclusive factors in determining the amount and duration of maintenance:

> (a) The financial resources of the party seeking maintenance . . . and his or her ability to meet his or her needs independently . . . ;
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c) The standard of living established during the marriage . . . ;
> (d) The duration of the marriage . . . ;
> (e) The age, physical and emotional condition, and financial obligations of the spouse . . . seeking maintenance; and
> (f) The ability of the spouse . . . from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse . . . seeking maintenance.

" 'The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of the relevant factors, the award must be just.' " <u>In re Marriage of Valente</u>, 179 Wn. App. 817, 821, 320 P.3d 115 (2014) (quoting <u>In re Marriage of Bulicek</u>, 59 Wn. App. 630, 633, 800 P.2d 394 (1990)).

We review a spousal maintenance award for an abuse of discretion. <u>Valente</u>, 179 Wn. App. at 822. In exercising its discretion, "the trial court must consider the factors listed in RCW 26.09.090(1)." <u>In re Marriage of Anthony</u>, 9 Wn. App. 2d 555, 564, 446 P.3d 635 (2019). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." <u>In re Marriage of Littlefield</u>, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "An award of maintenance that is not based upon a fair consideration of the statutory factors constitutes an abuse of discretion." <u>In re Marriage of Crosetto</u>, 82 Wn. App. 545, 558, 918 P.2d 954 (1996).

B

Reed contends the trial court erred inasmuch as it determined that consideration of the statutory maintenance factors supported an award of maintenance. We disagree.

At trial, Howard testified she was a full-time student with two years left in school. According to her financial declaration admitted at trial, her sole income was $2,607.00 per month in G.I. Bill benefits for the months she was in school. Howard also attested that she had monthly expenses of $3,380.00, including housing, transportation, utilities, personal, food, household, and children's expenses. In other words, there was evidence introduced at trial that Howard had

a monthly deficit of approximately $770.00. Additionally, Howard testified that she had to pay for her text books out of pocket, and that in her most recent quarter of school, her books cost about $700.00. She testified further that she was behind on her electric bill by about $600.00 and her Xfinity bill by about $489.00; and that she had an outstanding credit card balance of $581.00. Howard testified that before she and Reed separated, she was a full-time student while Reed worked full time. She also testified that Reed supported the couple for "basically the whole marriage," and that since their separation, she had been relying on public assistance and charity to pay her rent and other bills.

Meanwhile, according to Reed's available Georgia Pacific pay stub, his net pay for the two-week period from August 30, 2021 through September 12, 2021 was $2,150.81.[4] A reasonable inference from this pay stub was that Reed had actual net income of twice that, or approximately $4,300.00 per month. With regard to his expenses, Reed relied on his financial declaration,[5] which listed $1,370.00 for rent and certain utilities, $15.00 for rental insurance, $585.00 for transportation expenses, $440.00 for utilities not already factored into his housing expenses, and $380.00 for groceries—for a total of $2,790.00,[6] exclusive of debt payments.

---

[4] Although the exhibit itself is not in the record, it is apparent from the record that this pay stub, which is a part of the clerk's papers, was admitted as an exhibit at trial.

[5] Although the exhibit itself is not in the record, it is apparent from the record that Reed's financial declaration, which is a part of the clerk's papers, was admitted as an exhibit at trial.

[6] Reed's financial declaration also includes a $410.00 expense for "[i]nsurance premium," but Reed testified that this was an error.

The evidence at trial supported a determination that Reed's monthly income exceeded his monthly expenses by as much as $1,510.00, depending on how much he put toward certain outstanding debts. The evidence supported a determination that Reed had the ability to pay some amount of maintenance while meeting his own needs and financial obligations. It also supported a determination that Howard did not have the financial resources to meet all of her needs independently, would need two years to complete her education, and had relied on Reed for financial support during the marriage. Under these circumstances, Reed does not establish that the trial court abused its discretion by concluding that maintenance was warranted for the two years Howard had left in school. Cf. In re Marriage of Luckey, 73 Wn. App. 201, 209, 868 P.2d 189 (1994) (purpose of maintenance is to support a spouse until she is able to earn her own living or otherwise becomes self-supporting).

Reed asserts that Howard's income was $4,902.00 (not $2,607.00) per month. He counts, as income to Howard, benefits from Temporary Assistance for Needy Families, assistance from King County Veterans, and assistance from Catholic Community Services. In re Marriage of Zahm held that "social security benefits were an appropriate element for the court to factor into its consideration of [a] maintenance award." 138 Wn.2d 213, 227, 978 P.2d 498 (1999). But Reed points to no authority holding that the availability of charitable benefits bears on the court's assessment of the maintenance recipient's ability to meet their needs "independently." RCW 26.09.090(1)(a); cf. Hammond v. Hammond, 26 Wn. App.

129, 132, 611 P.2d 1352 (1980) (distinguishing social security benefits from public assistance).

Reed also asserts that Georgia Pacific "reduced his hours from 40/wk down to only 29/wk netting only about $2,000 per month going into the trial." Reed testified his hours had been reduced, but he did not submit a pay stub to corroborate that testimony, and we do review the weight the trial court assigned to the evidence. In re Marriage of Bundy, 12 Wn. App. 2d 933, 938, 460 P.3d 1111 (2020) (appellate court does not reweigh evidence). The trial court did not abuse its discretion by ordering Reed to pay maintenance and to do so for two years.

C

We reach a different conclusion, however, concerning the amount of maintenance the court ordered. In Anthony, the court similarly held that an award of maintenance was appropriate. 9 Wn. App. 2d at 568. But because the trial court "did not make a finding on the actual income of the parties," this court remanded with instructions to the trial court to "determine the income of each party and enter a specific finding on income before considering the statutory factors for maintenance." Id. at 563. With regard to the statutory factors, the court said, "Maintenance not based on a fair consideration of the statutory factors constitutes an abuse of discretion." Id. at 564. Even though the trial court had indicated it had considered the factors, including RCW 26.09.090(1)(f), in the absence of a clear finding of the income of the spouse ordered to pay maintenance, this court said the record did not adequately "address [the paying spouse's] ability to pay maintenance or [meet] his needs and financial obligations." Id. at 567.

The record does not show that the trial court specifically addressed the amount of Howard's need or whether Reed could both pay $1,860.20 per month in maintenance and meet his own needs and financial obligations. See RCW 26.09.090(1)(a), (f). The trial court orally ruled that Howard "need[ed] some resources to be able to complete her education." But nothing in its oral or written findings reveals what amount of resources it found Howard needed, or how the $1,860.20 figure was tethered to that need. Howard's financial declaration indicated a shortfall of approximately $770.00. Meanwhile, the trial court found that Reed "is employed and has the ability to remain employed, and therefore has the ability to pay maintenance." Although the trial court stated it considered the "resources available to [Reed] to meet his needs," it did not make findings as to the amount of those resources or whether they were sufficient to cover Reed's expenses while paying maintenance. The evidence was uncontroverted at least that Reed was not working at Shasta. No evidence admitted at trial showed that Reed's actual, monthly net income was more than $4,300.00. Nor did the trial court make a finding that Reed was voluntarily underemployed or impute income to him for that reason. Cf. RCW 26.19.071(6) (imputing income due to voluntary underemployment for purposes of child support). While the trial court stated it relied on "loans [Reed] received," the only loan described at trial was a $6,300.00 loan Reed received from his mother. It is undisputed that Reed used that loan to buy a car and pay his first and last month's rent and security for his apartment. The record does not support a determination that the loan enabled Reed to pay maintenance.

RCW 26.09.090(1)(f) required the trial court to consider Reed's ability to pay while meeting his own needs and financial obligations. The court was not required to make specific factual findings on this factor. Anthony, 9 Wn. App. 2d at 564. Nevertheless, a trial court's findings should, as a general matter, "be sufficient to suggest the factual basis for the ultimate conclusions." In re Marriage of Monaghan, 78 Wn. App. 918, 925, 899 P.2d 841 (1995). Assuming monthly net income of $4,300.00 and deducting the expenses listed in Reed's financial declaration—which were not contradicted—it appears Reed had a monthly surplus of at most $1,510.00. This is substantially less than $1,860.20 even before taking into consideration Reed's debts. Considering the parties' respective financial resources and abilities to meet their needs, the record does not show the basis for maintenance in this amount. Cf. In re Marriage of Spreen, 107 Wn. App. 341, 348, 28 P.3d 769 (2001) ("Of primary importance in the maintenance award are the parties' economic positions following the dissolution.").

It appears from the record that the trial court arrived at the maintenance amount by taking the principal amount then owing under the Temporary Order and dividing it by the two years—or 24 months—that Howard needed to complete her education. The trial court's reliance on the Temporary Order reflects the fact Reed had not paid ordered maintenance at the time of trial. The trial court did not say explicitly it intended the award of future maintenance to make up for Reed's not having paid maintenance in violation of the Temporary Order. But if this was the court's intent, the final order still needed to account for the statutory factor of Reed's ability to pay maintenance and meet his own needs. Yet here, the court

based its final order on a temporary order that was entered as a matter of default: The commissioner who entered it did not consider any of the statutory maintenance factors and instead granted Howard's maintenance request in full based solely on Reed's failure to respond. The amount of maintenance ordered in the Temporary Order therefore does not serve to ground the final order in the statutory factors in the manner required by Anthony.

For the foregoing reasons, we reverse as to the monthly amount of maintenance, and we remand to the trial court to reconsider that amount and enter appropriate findings. We necessarily also reverse the acceleration clause authorizing Howard to obtain a judgment for the "entire amount remaining to be paid" if Reed fails to make a monthly payment in full.

IV

As a final matter, Reed requests attorney fees on appeal pursuant to RCW 26.09.140, which gives the court discretion to order a party to pay the other party's reasonable attorney fees "after considering the financial resources of both parties." In making an award of attorney fees under the statute, " 'the court must balance the needs of the one party against the other party's ability to pay.' " In re Marriage of Nelson, 62 Wn. App. 515, 521, 814 P.2d 1208 (1991) (quoting In re Marriage of Coons, 53 Wn. App. 721, 722, 770 P.2d 653 (1989)). Where, as here, applicable law requires this court to consider the financial resources of the parties regarding a request for attorney fees, "each party must . . . file [and serve] a financial affidavit no later than 10 days prior to the date the case is set for . . . consideration on the

14

merits." RAP 18.1(c). Reed did not timely file a financial affidavit. Accordingly, we deny his request for fees on appeal.

We affirm in part, reverse in part, and remand to the trial court to reconsider the monthly maintenance amount and enter findings with regard thereto.

Birk, J.

WE CONCUR: